## Hutchinson and Rourke *versus* Schimmelfeder.

*Reciprocal Rights and Duties of adjoining Lot-owners, as to Grading and Excavating.*

1. If two persons own adjoining lots, lying below the grade of the street on which they front, and one of them wishes to grade up to the street, he must so fill up his own lot that the earth will not pass over his line upon the other lot: and where the latter had built a wall and erected a house on it, *within his own line*, the former can neither build to the wall nor throw earth against it, and if he does so, he is responsible in damages.

2. Even if no injury was done to the wall, the plaintiff would still be entitled to nominal damages, for covering up his land between his line and the wall of his house; and where the wall was cracked and injured by piling earth against it, he was entitled to damages for the injury done.

ERROR to the District Court of *Allegheny county.*

This was an action of trespass, *quare clausum fregit,* brought by the defendant in error against the plaintiffs in error, in the District Court of Allegheny county, for alleged damages done to a brick dwelling-house in the eighth ward, city of Pittsburgh.

The plaintiffs and defendant own adjoining lots in the hollow on Magee street, between Pennsylvania avenue and Boyd's Hill. The street is some fifteen feet higher than the adjoining land. The lots are on a sharp declivity, the ground in front being much higher than in the rear; the alley in the rear of the lot is not so high as the street in front; so that if filled up from front to back, the lots would not be level.

Schimmelfeder's house is three stories high, two stories below the grade, and one story above, or one story high in the front on the street, and three stories high in the rear.  The two lower stories of this house are built of brick, nine inches thick.  In wet weather the water accumulates and stands on the rear of the two lots.  In the spring of 1859, Hutchinson commenced filling up his lot, and employed Rourke to deposit upon it the earth which he was excavating from a lot or lots on the side of the adjoining hill, in order to bring the lot up to within eight or ten feet of the grade of Magee street, the usual height for the bottom of the cellar.  In doing this the earth necessarily came in contact with the side or cellar wall of the house belonging to Schim-

[Hutchinson and Rourke *v.* Schimmelfeder.]

melfeder, and, as he alleged, caused the same to spring and crack, which was the trespass complained of.

The defendant below contended that he had a right to fill up his lot so as to conform to the grade of the street, and all that he was bound to do was to exercise ordinary care, and do no unnecessary injury to his neighbour; that both parties were bound to conform to the grade of the city; that the plaintiff below had no right so to construct his building as to throw a large extra expense upon his neighbour; and that, if the foundation walls of plaintiff's house had been built of stone, of the ordinary strength and thickness of walls usually built for houses of that class, they would have resisted the ordinary pressure caused by the filling up of defendant's lot, and no injury would have resulted; and to this effect prayed instructions, which were refused.

The plaintiff below contended that the defendant was bound to build a stone wall all around his lot to hold the earth to enable him to fill up to the grade, and asked the court so to instruct the jury.

The court (HAMPTON, J.), after stating the case and the points made by the counsel, charged the jury as follows:—

"If two persons own adjoining lots which lie below the grade of the street on which they front, and either wishes to grade his lot up to the street, he must build a wall on his own ground, or in some other way keep the dirt within his own line. He cannot so fill up his own lot as to let the earth pass over his line on the lot of his neighbour; and if the latter has built a wall and erected a house within his own line the former is not at liberty either to build to his neighbour's wall, or throw earth against it so as to spring it out of line or do it any other injury, and if he does so he is responsible in damages. If the plaintiff's house was built of improper materials, and the injury to the walls resulted from that cause, the plaintiff cannot recover for that injury. In other words, if the injury to the walls was not caused by the defendant heaping up the earth against them he cannot recover for that injury, but still the plaintiff would be entitled to recover nominal damages, at least, if the defendant covered up for several feet the small strip of ground between his line and the wall of his house, and this is an answer to defendants' first point. In answer to the second point we have to say that there is no evidence in the case tending to show that the plaintiff was under any obligation to grade his lot up to the street or to any other grade, nor that he was guilty of any negligence or breach of duty in that respect."

Under these instructions there was a verdict in favour of plaintiff for $72, and judgment being entered thereon, the defendant sued out this writ, and assigned as cause for reversal, that the court below erred—

[Hutchinson and Rourke *v.* Schimmelfeder.]

1. In refusing to charge, " that if they believe the plaintiff in building the foundation or cellar walls of his house built them of improper materials, and the injury resulted from that cause, the plaintiff cannot recover."

2. In refusing to charge as requested, " that property-holders are bound to conform to the grades and regulations of the city, and if injury resulted to the plaintiff from his own neglect in this particular, he cannot recover."

3. In refusing to charge as requested, " that the defendant had a right to fill up his lot and bring it to the grade as regulated by the city authorities, and to place sufficient dirt upon it for that purpose, doing no wilful injury to his neighbour, the plaintiff; and if the plaintiff failed to fill up and conform to the grade, and the dirt did run over into the plaintiff's lot, still he cannot recover."

*John Barton*, for plaintiff in error.

*R. & S. Woods*, for defendant in error.

The opinion of the court was delivered, October 31st 1861, by
THOMPSON, J.—The absolute rights of every Englishman are said, by the author of the Commentaries, to consist of three principal or primary articles: the right of personal security, personal liberty, and private property : Bl. Com. 128. These are said by the same author to be irrevocably secured by *Magna Charta;* by the statute *de confirmatione chartarum;* the Habeas Corpus Act; the Bill of Rights, and lastly, by the Act of Settlement, after the Revolution. With us these rights are secured by the constitution of the state and United States, and thus being defined, we distinguish constitutional from arbitrary or despotic governments. The right of private property, as defined by the same authority, consists "in the free use, enjoyment, and disposal of all acquisitions, without any *control* or *diminution, save only by the laws of the land :*" Id. 138. Apply these general principles.

There being no law to interfere with the enjoyment by the plaintiff of his property in the manner which he had chosen to do, his enjoyment could not be interfered with by the defendant on any plea of general or personal benefit: he was bound to yield to neither; to nothing short of the law of the land. This not requiring any concession to the defendant, the latter was without the shadow of right in carting earth and dirt upon his premises. If, therefore, his acts occasioned injury to the plaintiff, it was right to hold him answerable to the extent of the injury. It was no excuse for his trespass that he could not with equal facility, or at the same cost, fill up his lot to the grade of the

[Hutchinson and Rourke *v.* Schimmelfeder.]

street, without carting a portion of the material on plaintiff's lot. He was, by a moral as well as legal obligation, bound to use his property so as not to injure that of the plaintiff. If he could not act in accordance with this principle, he could not lawfully act at all. We think the judgment of the court on the points of the defendant were expressed entirely in accordance with the law, and the answers given to the jury faultless.

The judgment is therefore affirmed.