# Collins v. Wayne Iron Works, Appellant.

*Equity—Nuisance—Injunction—Iron works—Residential neighborhood—Noise.*

1. No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells.

2. The entry of an injunction is, in some respects, analogous to the publication of a penal statute; it is a notice that certain things must be done or not done, under a penalty to be fixed by the court. Such a decree should be as definite, clear and precise in its terms as possible,

so that there may be no reason or excuse for misunderstanding or disobeying it; and when practicable it should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ.

3. Where the facts and equities call for it, a chancellor is required to give relief by injunction; but such injunction should never go beyond the requirements of the particular case; and under no circumstances should a decree be entered the apparent practical effect of which will be to close an industrial plant, if it is possible to frame another form of decree which will give such relief as the plaintiff is entitled to.

4. On a bill in equity to enjoin the noisy operations of an iron works in a residential neighborhood, the close proximity of a railroad and the noise of the great number of trains that pass over it, may be considered as affecting the standard of comfort normally prevailing in the locality in question.

5. In such a case where the evidence shows that the real annoyance was caused in the summer time when the windows and doors of the defendant's establishment were open, and when the defendant did work outside of its building, and at times in the evenings, it is error for the court to enter a decree in such general terms that obedience to it would result in the closing up of the defendant's works. In reversing such a decree the Supreme Court will direct that the defendant shall not operate the machinery of a noisy character between certain specified hours, and that it shall carry on all such operations on the inside of its buildings with windows securely closed with double sash and with the doors shut.

*Equity—Injunction—Building restriction—Nuisance.*

6. Where a bill in equity to enjoin an iron works as a nuisance contains no averment or prayer for relief founded upon a building restriction in defendant's deed, and it appears that there was no proper effort made in the court below to have the restriction construed, and it also appears that other industrial establishments were located in the neighborhood, the Supreme Court, on appeal, will not sustain such a construction of the restriction as would result in the entire closing up of defendant's works.


Argued Feb. 8, 1910. Appeal, No. 306, Jan. T., 1909, by defendant, from decree of C. P. Delaware Co., Dec. T., 1906, No. 41, on bill in equity in case of Susan Collins v. Wayne Iron Works. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Decree modified.

Bill in equity for an injunction. Before JOHNSON, P. J.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*E. H. Hall* and *John G. Johnson,* with them *John B. Hannum,*
for appellant.—Private citizens have no right of action either
in law or equity for the suppression of a public nuisance un-
less on averring and proving special damage to themselves:
Mechling v. Kittanning Bridge Co., 1 Grant, 416; Robinson v.
Gerrity, 7 Lacka. 383.

Where restrictions in a deed interfere with the free use of the
land conveyed the law's interpretation is strict and any doubt
will be resolved against the restriction: Warbrick v. May, 2
W. N. C. 117; Tobey v. Moore, 130 Mass. 448; Gowen v. O'Hara,
15 Pa. Dist. Rep. 753.

*V. Gilpin Robinson,* with him *Arthur B. Huey* and *Henry N.
Smaltz,* for appellee.—The noisy operation of appellant's
plant is a nuisance, having regard to the character of the
neighborhood in which the plant is located: Baltimore & Po-
tomac R. R. v. Fifth Baptist Church, 108 U. S. 317 (2 Sup.
Ct. Repr. 719); Penna. R. R. Co. v. Angel, 41 N. J. Eq. 316
(7 Atl. Repr. 432); Robb v. Carnegie, 145 Pa. 324; Dallas v.
Decorative Art Club, 4 Pa. C. C. Rep. 340; Harrison v. St.
Mark's Church, 12 Phila. 259; Rushmer v. Polsue, L. R.
(1906) 1 Ch. Div. 234; Huckenstine's App., 70 Pa. 102; Roden-
hausen v. Craven, 141 Pa. 546; Penna. Lead Co.'s App., 96 Pa.
116; Osthaus v. Robinson, 12 Pa. Dist. Rep. 25.

The nuisance works a special damage to the complainant,
and the complainant's averment of damage was sufficient:
Roessler & Hasslacher Chemical Co. v. Doyle, 73 N. J. Law,
521 (64 Atl. Repr. 156); Wesson v. Washburn Iron Co., 95
Mass. 95.

The use violated the restrictions in the deed: Landell v.
Hamilton, 175 Pa. 327; Rowland v. Miller, 139 N. Y. 93 (34
N. E. Repr. 765); Tod-Heatly v. Benham, L. R. 40 Ch. Div.
80; Gowen v. O'Hara, 15 Pa. Dist. Rep. 753; De Gray v. Mon-
mouth Beach Club House Co., 50 N. J. Eq. 329 (24 Atl. Repr.

388); Bimson v. Bultman, 3 App. Div. (N. Y.) 198; Clark v. Martin, 49 Pa. 289; Electric City Land, etc., Co. v. Coal Co., 187 Pa. 500; Barrow v. Richard, 8 Paige Ch. (N. Y.) 351; Birdsall v. Tiemann, 12 How. Pr. (N. Y.) 551; Gilford v. Babies' Hospital, 21 Abbott's New Cases, 159; Elliotson v. Fleetham, 2 Bing. (N. C.) 134; Scott v. Firth, 10 L. T. (N. S.) 240; Inchbald v. Robinson, L. R. 4 Ch. App. 388; Rogers v. Elliott, 146 Mass. 349 (15 N. E. Repr. 768).

OPINION BY MR. JUSTICE MOSCHZISKER, February 21, 1910:

The plaintiff below, appellee here, filed a bill against the defendant below, appellant here, alleging a nuisance from the noise created by the operation of defendant's works.

The plaintiff's house is in a suburban residential section within less than 354 feet of a four-track railroad over which at this point about 160 trains are operated between 7 A. M. and 7 P. M. each day. The defendant's iron works are located in a strip of land lying between the residence of the plaintiff and the railroad. This strip of land is unsuited for residential purposes. It had been in use for industrial business purposes before the plaintiff erected her house in 1899, and has been so used ever since. The defendant's plant has grown up since 1902 without protest from the plaintiff until the filing of the bill. The noise complained of was greatly increased in the summer of 1906, and the bill was filed in the following December. The defendant employs from fifty to one hundred men; its plant is worth $50,000; and it does a business approximating $200,000 a year. There has not been any depreciation in the value of the plaintiff's property. The price of the property in 1899 was $7,800, and the plaintiff now values it at $10,000. Since the filing of the bill the plaintiff has removed from the neighborhood, and has rented her property for one year at $60.00 per month. She did not have any difficulty in securing a tenant, and there is no evidence that the tenant has made any complaint of annoyance from defendant's works.

The complaint averred in the bill is: "The said defendant has so wrongfully and injuriously conducted and used the said buildings and machinery therein, and so wrongfully and

injuriously operated the said compressed air drills, hammers, riveting machines and other appliances therein maintained that a noise, continuous during said operation and unusual in quality and volume, is produced by the said defendant in its operation of said Iron Works," and "that such operation with such distressing results to your orator is unnecessary and avoidable." The learned court below found: "The noises of which complaint is made are not reasonably endurable or bearable, and render the dwelling of complainant during the operation of said iron works uncomfortable and unfit for use as the residence of a reasonable and normal person." The following decree was entered: "It is ordered, adjudged and decreed that you, Wayne Iron Works, your servants, agents and employees do abate the nuisance complained of in said bill, and you are hereby enjoined and restrained from the operation of your works by at any time making noises with air drills, power hammers, power chippers, riveting machines or other tools or apparatus so as to render the premises of the plaintiff described in the said bill unfit for use and enjoyment as a residence by a reasonable and normal person."

The defendant contends: first, that the decree does not specifically point out the things that it is required to do or to refrain from doing in order to abate the nuisance which the court found to exist; and, second, that the evidence in the case does not justify such a sweeping decree as the one entered.

The entry of an injunction is, in some respects, analogous to the publication of a penal statute; it is a notice that certain things must be done or not done, under a penalty to be fixed by the court: Sullivan v. Jones & Laughlin Steel Co., 222 Pa. 72. Such a decree should be as definite, clear and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it; and when practicable it should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ. In the present instance, the only definite thing that the defendant is ordered to do is "to abate the nuisance complained

of in said bill." As the evidence does not show any improper or negligent operation of the machinery, and as the defendant's conclusion as to what constitutes "a reasonable and normal person" may well differ from that of the plaintiff, it would seem that the only safe way to comply with the decree would be to entirely stop the running of its machinery. Where the facts and equities call for it, a chancellor is required to give relief by injunction; but such injunction should never go beyond the requirements of the particular case; and under no circumstances should a decree be entered the apparent practical effect of which will be to close an industrial plant, if it is possible to frame another form of decree which will give such relief as the plaintiff is entitled to. No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells. Here, in measuring the relief to be given, the close proximity of the railroad and the noise of the great number of trains that pass over it, should be considered as affecting the standard of comfort normally prevailing in the locality in question. In a case like the present where the annoyance arises from the conduct of a business which is not a nuisance per se, a strong effort should be made to conserve the rights of all the parties; and an important question is, Can the noise by any reasonable means be so moderated as to accord with the degree of quietness the plaintiff has a right to enjoy; and, if it can, by what means?

Turning to the testimony, a careful reading shows that many of the witnesses definitely state, and others plainly indicate, that the real annoyance was caused in the summer time when the windows and doors of the defendant's establishment were open, and when the defendant did work outside of its buildings, and at times in the evenings. Plaintiff's husband said that the great difficulty was in the summer time "because they must have the windows open and the doors open to get in air," adding "I do not care if they would shut it up where the heavy pounding is, so that the noise cannot come out." Another witness states that he did not notice the noise so

much in the winter time, and that the difference was caused by the closing of the windows. And another: "We don't know much about it in winter, because the windows are all closed," adding, that in the summer time it is about seventy-five or eighty per cent worse. These statements give a fair idea of the general trend of the testimony of the plaintiff and her witnesses. We find no manifest error in any of the findings of fact made by the court below; but in addition thereto, the testimony suggests and is sufficient to sustain the further finding that the disturbance of the standard of comfort normally prevailing in the neighborhood of the plaintiff's residence, and the consequent annoyance to the plaintiff, are caused by the defendant's permitting the use of tools and apparatus of a noisy character on its premises outside of its buildings; by their use inside of certain of its buildings with the windows and doors open; and at times by the use of such tools and apparatus until late in the evenings.

On this finding, a definite decree can be entered enjoining the defendant from operating tools, machines or apparatus of a noisy character between certain hours, and requiring it to carry on all such operations on the inside of buildings with windows securely closed and with the doors shut. This decree will probably afford the relief required. At least such a measure of relief should be first tried before the entry of a decree that may mean the closing of the defendant's works, the ruin of a prosperous business, and the loss of employment to many men.

No point of law was made either here, or in the court below, on the fact that the plaintiff was not living in her property at the time of the hearing and entry of the decree. The case was apparently tried upon the theory that, since the plaintiff had been in the occupancy of the property at the inception of the action, had been compelled to remove by the nuisance complained of, and had the right to return to it at the expiration of the lease, she was entitled to such relief as the facts might warrant.

We see no merit in the contention that the building restrictions alone are sufficient to sustain the decree entered. The

bill does not contain any averment or prayer for relief founded upon this ground, and there was no proper effort made to raise or have this point of law passed upon. The court below finds that the defendant's real estate is subject to a restriction against the erection of "any hotel, tavern, drinking saloon, tannery, slaughter-house, skin-dressing establishment, livery stable, glue, soap, candle or starch manufactory, or other building for offensive purposes or occupation;" and it appears that the words "blacksmith, carpenter or wheelwright shop, steam mill or commercial establishment" were physically eliminated from the restriction as stated in the deed. The restriction upon the property of the plaintiff does not appear in terms upon the record, and we have no sufficient light on the general restrictions in the locality or their relation to the defendant's property. It appears that some of the properties were originally sold with restrictions, and some without. In view of these facts, and of the facts concerning the character of the defendant's land, and in view of the express finding that in addition to the defendant's works there are located in the immediate neighborhood waterworks, an electric plant, a livery stable, a blacksmith establishment, and an automobile garage, neither the meaning of the restriction contended for by the plaintiff nor the assertion of her right to enforce such restriction, can be sustained in this case.

The twenty-second assignment of error, which goes to the form of the decree, is sustained, and the decree entered by the court below is modified; and it is now adjudged, ordered and decreed that the Wayne Iron Works, its servants, agents and employees are restrained from working its plant in such a manner as to create the nuisance complained of, and to that end they are enjoined from operating drills, power hammers, power chippers, riveting machines or other tools, machines or apparatus of a noisy character between the hours of 7 P. M. and 7 A. M.; and from operating such tools, machines and apparatus of a noisy character at any time unless on the inside of buildings with all windows securely closed with double sash, and with the doors shut. The costs of this appeal to be paid by the appellant.