# Quinn, Appellant, *v.* American Spiral Spring & Manufacturing Co.

*Equity—Nuisance—Continuing nuisance—Manufacturing plant —Injury to residence—Notice—Laches—Estoppel—Comparative injuries — Tortious acts — Interest of public—Maxim—Monetary damages.*

1. A dweller in a manufacturing district is not entitled to have the same peace and quiet as he could have if living in one that was strictly residential.

2. One who moves into a manufacturing district must anticipate that vacant property adjoining his house is likely to be thereafter improved for manufacturing purposes.

3. Such a resident can insist, however, that any improvement made on vacant property adjoining his home, shall be made with

due regard to whatever rights appertain to him as a home dweller in a manufacturing district.

4. Purchasers of vacant land in a manufacturing district, which adjoins a property occupied as a residence, are not obliged to refrain from constructing an industrial plant on their land, nor from using the kind of machines generally employed in the particular business; but they are required to so arrange the machinery used by them as to do as little injury to the adjoining resident as is reasonably possible, considering the use to which the machinery is to be put and the needs of the business. If they neglect this duty, equity will compel them to undo the wrong, though such a course will entail more expense than the property of the adjoining owner is worth.

5. The rule that equity will refuse to enjoin where greater injury will result from granting than from refusing an injunction, has no application where the act complained of is in itself as well as in its incidents tortious.

6. In a suit between private individuals regarding the place and manner of operation of a manufacturing plant, a supposed interest of the public will not be considered, unless it is direct and appertains to the place and manner of operation.

7. One who knows that a plant is about to be constructed which will necessarily result in injury to him, and does not then object to it will not thereafter be entitled to enjoin its operation. This rule does not apply, however, where those facts are unknown to him until after the work of construction has been completed.

8. Laches will not be imputed to a plaintiff where no injury results to defendant by reason of the delay.

9. Where a nuisance is of a continuous and progressive character equity will enjoin it.

10. Equity will also require the payment to plaintiff of such damages as will recompense him for the injuries he had sustained by the nuisance.


Argued March 21, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 86, March T., 1928, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1927, No. 2748, dismissing bill in equity, in case of Patrick Quinn v. American Spiral Spring & Manufacturing Co. Reversed.

Bill for injunction. Before McVICAR, J.

The opinion of the Supreme Court states the facts. Bill dismissed. Plaintiff appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Thomas L. Kane,* for appellant.—The appropriate remedy for this purpose is an injunction: Penna. Lead Co.'s App., 96 Pa. 116; Kramer v. Slattery, 260 Pa. 234; Keppel v. Coal & Nav. Co., 200 Pa. 649; Gray v. C. & I. Co., 286 Pa. 11; Masson's App., 70 Pa. 26; Stokes v. R. R., 214 Pa. 415; Fell v. Bennett, 110 Pa. 181.

The operation of defendant's machinery is a private nuisance injurious to plaintiff: Phillips v. Donaldson, 269 Pa. 244; Alexander v. Bread Co., 21 Pa. Superior Ct. 526; Hustleton v. Park, 256 Pa. 255.

Want of negligence is no defense in an action for nuisance: Stokes v. R. R., 214 Pa. 415; Vautier v. Refining Co., 231 Pa. 8; Siwak v. Boro., 72 Pa. Superior Ct. 218.

Defendant is liable for all damages done special to plaintiff: Green v. Sun Co., 32 Pa. Superior Ct. 521; Hauck v. Pipe Line, 153 Pa. 366; Rogers v. Traction Co., 182 Pa. 473.

The court should not refuse an injunction on the ground that greater injury would be done by granting than by refusing it.

No laches can be imputed to plaintiff: Penna. Lead Co.'s App., 96 Pa. 116; Bright v. Allan, 203 Pa. 394; Columbia & M. Elec. Co. v. North Branch T. Co., 258 Pa. 447.

*James Milholland,* with him *Alter, Wright & Barron,* for appellee.—The granting of an injunction is not a matter of right: Keeling v. Ry., 205 Pa. 31; Robb v. Carnegie, 145 Pa. 324; Richard's App., 57 Pa. 105.

Where the properties affected are located, not in a residential district but in a heavy industrial district, equity will not interfere to enjoin the lawful operation

of a legitimate industry: Krocker v. Planing Mill Co., 274 Pa. 143; Osthaus v. Robinson, 12 Pa. Dist. R. 25; Thoenebe v. Mosby, 257 Pa. 1; Elliott Nursery Co. v. Light Co., 281 Pa. 166; Richard's App., 57 Pa. 105; Straus v. Barnett, 140 Pa. 111; Andress v. Sturts, 35 Pa. C. C. R. 183.

If any injury has been done to appellant, his laches should limit him to his remedy at law.

OPINION BY MR. JUSTICE SIMPSON, May 7, 1928:

Prior to 1919 plaintiff became totally blind and unable to work, and since then he has been obliged to spend most of his time in his home. He had been a worker in manufacturing establishments, and knew that noise and vibration were caused by the use of heavy machinery. In 1919 he and his wife purchased, as tenants by the entireties, the residence property 5621 Butler Street, in the City of Pittsburgh; two years later the wife died and he became its sole owner. It has been his home constantly since its purchase. It was then, and is now, located in a manufacturing district, which has always contained, however, a number of other residences in the immediate vicinity of plaintiff's.

In 1924 defendants bought a vacant lot adjoining plaintiff's home, for the purpose of constructing thereon a plant for manufacturing iron and steel springs. Shortly thereafter, defendants' president called upon plaintiff and told him of their intention to build a plant "which would make a noise and racket, and perhaps would cause some annoyance to him," but would do him no harm. Nothing was said regarding the intended location of the various pieces of machinery therein. Defendants offered to buy his home and he refused to sell. They then constructed their plant, locating the largest and heaviest pieces of machinery unnecessarily close to plaintiff's dwelling. He was not told that this was to be done, nor did he know that it was being or had been done until after the plant was in actual operation.

When this occurred he made a formal written complaint to defendants regarding the noise and vibration caused by the heavy machinery, but they would do nothing except offer to buy his property at its land value, without allowing anything for the building on it. This he would not accept, and some fourteen months later filed the present bill in equity.

It was shown at the trial that the vibration imparted to plaintiff's house by the operation of the heavy machinery, due to the place and manner of its location, was so great that pictures and other articles were shaken from tables, walls and mantle pieces, plaster fell from the walls and ceilings, and, on one occasion, a brick fell from the chimney. The injury to the house, as it weakens under the constant shaking, will become progressively worse. It was also found, as a fact, that "the vibrations and noises are unpleasant and at times cause a nervous shock to those living within the house, and they seriously interfere with the comfort and enjoyment of plaintiff's residence as a dwelling house." So great is the nuisance thus caused, that plaintiff cannot long remain in the house while the plant is being operated, but is compelled, despite his blindness, to seek relief by going outside in all kinds of weather. The chancellor reported that the bill should be dismissed, and plaintiff limited to a recovery at law for whatever damages he has suffered: (1) Because his home was and still is in a manufacturing district; (2) Because more harm would be done by granting than by refusing an injunction; and (3) Because of laches in not sooner filing the bill. The court in banc sustained these conclusions, and entered a final decree of dismissal from which plaintiff prosecutes this appeal. To the extent hereinafter stated, it must be sustained.

When plaintiff purchased his property he knew he would not have the same peace and quiet in that manufacturing district, as he would have been entitled to in one that was strictly residential. He knew also that,

if the district continued to be industrial, the lot in the rear could be purchased for and improved as a manufacturing establishment. But neither he nor his property was outlawed because thereof; he could still insist that any improvement made on the rear property should be with due regard to whatever rights appertained to him as a home dweller in a manufacturing district: Dittman v. Repp, 50 Md. 516, 523. This is the true principle, and is so stated by us in Collins v. Wayne Iron Works, 227 Pa. 326, where complainant lived in a district in some respects like the one here. We there said (page 331) : "In a case like the present where the annoyance arises from the conduct of a business which is not a nuisance per se, a strong effort should be made to conserve the rights of all the parties; and an important question is, Can the noise by any reasonable means be so moderated as to accord with the degree of quietness the plaintiff has a right to enjoy; and if it can by what means?" See also Blomen v. N. Barstow Co., 35 R. I. 198 and Stevens v. Rockport Granite Co., 216 Mass. 486, in the latter of which Collins v. Wayne Iron Works, supra, is cited and followed.

Defendants, however, gave no heed to plaintiff's rights. When they purchased the rear lot, they were bound to know that while they could construct their proposed plant at that place, and could operate it with the kind of machinery usual in the business, they were nevertheless required, under the applicable legal principle above stated, to so locate and install that which they intended to use, as to do as little injury to plaintiff and his dwelling as was reasonably possible, considering the use to which the machinery was to be put and the needs of the business. This is where they failed in their legal duty. Apparently they thought that as their business was a lawful one, which they were entitled to carry on at that place, no just complaint could be made, if also they were careful in conducting their operations. Such is not the law: Pottstown Gas Co. v. Murphy, 39 Pa.

257, 263; Hauck v. Tidewater Pipe Line Co., Ltd., 153 Pa. 366; Rogers v. Phila. Traction Co., 182 Pa. 473, 478. As already stated, they were in duty bound to so locate and install their heavy machinery as not to deprive plaintiff, when it was properly operated, of the degree of quiet he had a right to enjoy: Collins v. Wayne Iron Works, supra. This they did not do, though they knew, as everyone else does, that the noise and vibration could have been greatly minimized by placing the heavy machinery at the other side of their lot, and that this could have been done without injury to any one. It can still be removed there, with great benefit to plaintiff, at a cost to defendant of some $12,000, and a ceasing of operations for a few months while the work is being done. Defendant contends that the machinery was placed in its present position, because it was expected to result in a more economical use of the plant, due to the fact that it is easier there to load and unload long and heavy bars of steel and iron, than would result if a change was made; but this is no excuse for the injury to plaintiff: Hutchinson v. Schimmelfeder, 40 Pa. 396, 398; Evans v. Reading Chemical Fertilizing Co., Ltd., 160 Pa. 209. Moreover, defendants' evidence to the effect that it did so result is not satisfactory or convincing, and the difference in expense of operation, if any, is not shown to be serious.

As defendants are only required to rearrange the heavy machinery, it is a matter of no moment, though evidently the court below thought otherwise, that they will lose more money in righting the wrong done, than plaintiff's property is worth. This they should have considered before they did the injury; the improper location of the machinery was their own act, uninfluenced by plaintiff, and they have no right to put upon him any loss by reason thereof: 14 R. C. L. 359, 360. Besides, "where justice is properly administered rights are never measured by their mere money value, neither are wrongs tolerated because it may be to the advantage

of the powerful to impose upon the weak,......the rule is [always] the same, 'So use your own as not to injure another' ": Penna. Lead Company's App., 96 Pa. 116, 127. As only the sovereign and those invested with its right of eminent domain can legally take or injure private property, without its owner's consent, the real question on this branch of the case is, does the expense which defendants will have to pay, if required to relocate their heavy machinery, prevent plaintiff from obtaining relief in equity? In Walters v. McElroy, 151 Pa. 549, 557, we said: "As to the principle invoked, that a chancellor will refuse to enjoin when greater injury will result from granting than from refusing an injunction, it is enough to observe that it has no application where the act complained of is in itself as well as in its incidents tortious. In such case it cannot be said that injury would result from an injunction, for no man can complain that he is injured by being prevented from doing to the hurt of another that which he has no right to do. Nor can it make the slightest difference that plaintiff's property is of insignificant value to him as compared with the advantages that would accrue to the defendants from its occupation." This statement of the law we repeated as late as Stuart v. Gimbel Bros., 285 Pa. 102, 106; and it applies to a case like the present, where an injunction is sought against the continuance of a wrong intentionally or carelessly inflicted, as this one was.

If it be thought that the public has an interest in having the plant continued in operation, which should be taken into account, it may be answered that this is a matter of no moment, unless the interest is direct and appertains to that of which the plaintiff has a just cause to complain. No such facts appear here. Even if the business be "of great public importance [it] stands on no different ground from any other branch of manufacturing, or from the cultivation of agricultural products......[The manufacturer] is serving himself in his

own way, and has no right to claim exemption from the natural consequences of his own act. The interests in conflict in this case are, therefore, not those of the public and of an individual, but those of two private owners who stand on equal ground as engaged in their own private business": Robb v. Carnegie, 145 Pa. 324, 340. Under such circumstances, "I have not been able to find a case in which substantial injuries to property rights, to the rights of enjoying and possessing property, have been sanctioned by a final refusal to enjoin [the doing of that which was wrongful in its inception and still is] on the mere ground that the public was interested in the continuance": Evans v. Reading Chemical Fertilizing Co., Ltd., 160 Pa. 209, 225. When our later cases are properly considered, nothing antagonistic will be found therein.

Nor is plaintiff to be deprived of relief because of his alleged laches. If we were deciding whether or not defendants should have been permitted to erect and operate the plant, much might be said in favor of the contention that plaintiff was barred by his laches, for he had sufficient knowledge, at the time of his first interview with defendants' president, to call upon him to then object to the construction, if he intended to do so. But the law is otherwise where, as here, the available objection is only to the continued use of the improperly located machinery which causes the excess injury. Where this was to be placed plaintiff did not know at the time of that interview. As he had no knowledge of defendants' wrongdoing until after the plant had been constructed and was in operation, his failure to immediately seek redress by legal proceedings cannot have harmed defendants, since "laches will not be imputed to a plaintiff, where no injury results to defendant by reason of the delay": Montgomery Bros. v. Montgomery, 269 Pa. 332; Selmer v. Smith, 285 Pa. 67, 70. The nuisance in this case being of a continuous and progressive character, equity has jurisdiction to compel

defendants to right the wrong, before they continue operating the plant: Hustleton v. Park, 256 Pa. 255; Gray v. Phila. & Reading Coal & Iron Co., 286 Pa. 11.

On a careful consideration of the whole case, we are of opinion that defendants should be required, within such reasonable time as the court below shall direct, to so relocate and install their heavy machinery, as to cause a minimum of injury to plaintiff and his property, consistent with a reasonable operation of the plant; that, if they do not do so within the time specified, they should be enjoined from operating the machinery until they do; and that they should be required to pay to plaintiff such damages as will recompense him for the injuries he has sustained from the improper location and use of the heavy machinery. For the proper determination of these matters, leave is given to produce further evidence, if desired by the court or either party.

The decree of the court below is reversed at the cost of appellee, and the record is remitted for further proceedings not inconsistent with this opinion.