418 A.2d 424

David J. BRIGHTBILL

v.

RIGO, INC., Rebecca W. Bollerman, Stan Stepnowski and Richard Gomes, Appellants.

Superior Court of Pennsylvania.

Argued June 11, 1979.

Filed Jan. 11, 1980.

316

Howard N. Stark, Allentown, for appellants.

David J. Brightbill, pro se.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

SUGERMAN, Judge:

The instant appeal is before us as the result of an injunction entered by the Court of Common Pleas of Lebanon County against the sale, distribution or exhibition of assertedly obscene magazines and motion picture films.

On January 6, 1978, the District Attorney of Lebanon County filed a complaint in equity against Appellant, Rigo, Inc., a corporation operating an "Adult Book Store" in Lebanon County, and against Appellants, Rebecca W. Boller-

---

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester County, Pennsylvania, are sitting by designation.

man, allegedly an officer of Rigo, Inc., Richard Gomes, manager of the store, and Stan Stepnowski, assistant manager of the store.

The complaint in equity, filed pursuant to and one day following the effective date of Pennsylvania's so-called Obscenity Statute, Act of 1977, Nov. 5, P.L. 221, No. 68 § 1, enacted as an amendment to the Crimes Code of Pennsylvania, Act of 1972, Dec. 6, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 5903, ("Crimes Code") asserted that Appellants sold in the past and continued to sell and exhibit certain obscene books, magazines and motion picture films in violation of the Crimes Code. The complaint set forth, as examples of the materials offered for sale, the specific titles of 15 magazines and books, and one motion picture film. In his prayer for relief, the District Attorney asked, inter alia, that the Defendants be enjoined from selling, uttering or exhibiting obscene materials, and from writing, printing, publishing or uttering any advertisement or notice stating where, how or from whom obscene materials can be purchased.

Section 5903(g) of the Crimes Code permits the District Attorney to institute an action in equity in a Court of Common Pleas to enjoin a violation of the Code. The court may issue an injunction only after written notice to a defendant, and hearing. The burden of proving a violation of the Crimes Code is upon the District Attorney, by proof beyond a reasonable doubt, and a defendant is entitled to a trial by jury upon the issue of obscenity. Finally, an injunction may issue only against a defendant named in the action.

Availing themselves of the right to trial by jury, Appellants demanded and on January 12, 1978, received such trial on the question of whether the named materials were obscene under the Crimes Code. At trial, the Commonwealth produced and caused to be admitted into evidence a number of exhibits, including 15 specifically titled magazines and five motion picture films. The jury ultimately by special findings, determined that each of the named magazines and films were obscene within the meaning of the Crimes Code.

Following the trial, on January 13, 1978, the lower court filed a Decree enjoining the Corporate Appellant and "its

agents, servants and employees," and the individual Appellants, and their "agents, servants and employees" or any person acting on behalf of the individual Appellants, from selling, uttering or exhibiting any of the named magazines or films found to be obscene by the jury.[1] In addition, Appellants were enjoined from selling, uttering or exhibiting ". . . any other book or magazine of the like kind or similar kind." The court in its Decree then added this sentence:

". . . The foregoing injunction shall also apply to movies and pictures of like kind or of a similar kind."

Finally, the lower court enjoined the Appellants from writing, printing, publishing or uttering any advertisement or notice announcing where, how or from whom any of the named magazines or films, ". . . or a like or similar kind . . ." can be purchased or obtained.

Following the entry of the injunction, Appellants filed a timely appeal in this court. In their appeal, Appellants do

1. The Decree in pertinent part follows:
"AND NOW, to wit, January 13, 1978, upon consideration of the Plaintiff's Complaint, we command that Rigo, Inc., a Pennsylvania corporation with offices at 128–132 North Eighth Street, Allentown, and a business office located at 2111 East Cumberland Street, North Lebanon Township, Lebanon County, Pennsylvania, its agents, servants and employees, and you, Rebecca W. Bollerman, Stan Stepnowski and Richard Gomes, [your agents, servants and employees or any person acting on your behalf,] to forthwith cease, desist and restrain from selling, uttering or showing a book or magazine known as *Teen Turn On*, a book or magazine known as *Call Boys*, a book or magazine known as *Bush Cuntry*, a book or magazine known as *Married Swingers*, a book or magazine known as *Leather*, a book or magazine known as *Torture of the Slavegirl*, a film known as *Hooked–Forced to Sex*, a book or magazine known as *Special No. 12*, a book or magazine known as *Bonds of Pleasure*, a book or magazine known as *There Must Be 50 Ways to Suck Your Lover*, a book or magazine known as *Lezo*, a book or magazine known as *Gay is Beautiful*, a book or magazine known as *Behind Closed Doors*, a book or magazine known as *Lipstick*, a book or magazine known as *Stag Film Affair*, a book or magazine known as *Mistress of Pain*, a film known as *Hot, Hard and Heavy*, a film known as *Porno Classics*, a film known as *Hollywood Swingers*, a film known as *Pussy Parade*, and any other book or magazine of the like kind or similar kind . . ." R. 10a–11a.

not contest the jury's finding the specific magazines and films in evidence to be obscene, and they do not here challenge the statute underlying the proceedings. Appellants do, however, contend that the language of the injunction purporting to enjoin the sale, display or advertising of unnamed publications and films of "like kind or similar kind" is both constitutionally offensive as a prior restraint and in violation of the principle that the prohibitory language of an injunction, to be valid and enforceable, must be definite and certain and fairly apprise the enjoined party of the nature of the prohibited acts or conduct.

As a second contention, Appellants assert that the attempt by the court to enjoin the corporate and individual Appellants' "agents, servants and employees" and "any person acting on behalf" of the individual Appellants, from engaging in the prohibited conduct is void and unenforceable as in violation of the clear language of the Crimes Code, permitting as it does, an injunction only against persons named as defendants in the action, after notice and hearing. We consider Appellants' contentions seriatim.

## I.

As we have observed, at trial, 15 magazines and five films were received in evidence, viewed by the jury and each, by special finding, determined to be obscene. The lower court thereupon not only enjoined the sale, exhibition and advertising of each of the specifically named magazines and films, but also purported to enjoin the sale, exhibition and advertising of unnamed magazines and films of a "like or similar kind." Appellants contend first that such language operates as a prior restraint upon the distribution of printed material and motion picture films protected by the Constitutions of the United States and Pennsylvania.

### A.

#### Prior Restraint

It is of course clear, as Appellee instantly notes, that obscene material is not protected by the First Amendment

to the Constitution of the United States. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Kois v. Wisconsin,* 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972); *United States v. Reidel,* 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971); *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

It is equally clear, however, that the power of a State to suppress obscenity is limited by the constitutional protections accorded free expression and there is thus no power to restrict the dissemination of publications or films which are not obscene. *Marcus v. Property Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

It is therefore no departure from the teaching of more than two centuries of recorded American jurisprudence to suggest that the dissemination of printed materials and other forms of expression is one of our most zealously protected rights, and is thus accorded protection by the First Amendment.[2] *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and by Article 1, § 7 of the Constitution of Pennsylvania. *Commonwealth ex rel. Davis v. Van Emberg,* 464 Pa. 618, 347 A.2d 712 (1975); *46 S. 52nd St. Corp. v. Manlin,* 398 Pa. 304, 157 A.2d 381 (1960).

As there is thus no power in a state to prohibit constitutionally protected speech, a state "is not free to adopt

---

**2.** Those rights accorded protection by the First Amendment are equally secure against state invasion through the due process clause of the Fourteenth Amendment. *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614–15, 37 L.Ed.2d 419, 430 (1973). As was observed by Chief Justice Hughes nearly fifty years ago, in *Near v. Minnesota,* 283 U.S. 697, 707, 51 S.Ct. 625, 628, 75 L.Ed.2d 1357 (1930):

". . . It is no longer open to doubt that the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action . . ."

whatever procedures it pleases for dealing with obscenity . . . without regard to the possible consequences for constitutionally protected speech . . ." *Marcus v. Property Search Warrant*, supra at 731, 81 S.Ct. at 1716, 6 L.Ed.2d at 1135.

■ One of the barriers erected to guard against invasions of constitutionally protected communications is commonly known as the doctrine of prior restraint, espousing the principle that no legal restraint may prevent publication or speech, although criminal or civil actions may follow such publication or speech[3].

The principle has most often been associated, although never exclusively, with injunctions against the publication of newspapers or the making of speeches, and it was just such an injunction that led the Supreme Court of the United States, in *Near v. Minnesota*, supra, to declare that prior restraints, while not absolutely prohibited in all instances, require the most exigent circumstances for justification. The doctrine of prior restraint remains viable yet today, and the court in *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), said again,

". . . Prior restraints have been accorded the most exacting scrutiny in previous cases. . . ." *Id.* at 102, 99 S.Ct. at 2670, 61 L.Ed.2d 404.[4]

**3.** The doctrine of prior restraint is not a recent concept. It finds lucid expression, for example, in 4 *W. Blackstone Commentaries* *151–153:

". . . The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this, is to destroy the freedom of the press; but if he publishes what is improper, mischievous or illegal he must take the consequences of his own temerity." *Id.* at 151–52 (Emphasis in original).
See *Near v. Minnesota*, supra at 713–14, 51 S.Ct. at 630. And see generally *F. Schaurer, the Law of Obscenity*, 228 et seq. (1976).

**4.** Prior restraints have been examined and found infirm in *Nebraska Press Association v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Organization for a Better Austin v. Keefe*, 402 U.S. 415,

In *Near*, a Minnesota statute provided for the abatement by injunction, as a public nuisance, of publications found to be "malicious, scandalous and defamatory[5]." Under this statute, the county attorney brought an action to enjoin the publication of what was described in the complaint as a malicious, scandalous and defamatory newspaper, magazine or periodical, based upon a series of articles already published. The State court, following trial, found that the previously published articles were malicious, scandalous and defamatory, concluded that the periodical constituted a public nuisance and perpetually enjoined the defendants

". . . from producing, editing, publishing, circulating, having in their possession, selling or giving away any publication whatsoever which is a malicious, scandalous or defamatory newspaper, as defined by law . . ." *Id.* at 706, 51 S.Ct. at 627.

In striking down the injunction as a constitutionally impermissible prior restraint, the court said, pertinent to the case at bar:

"If we cut through mere details of procedure, the operation and effect of the statute in substance is that public authorities may bring the owner or publisher of a newspaper or periodical before a judge upon a charge of conducting a business of publishing scandalous and defamatory matter . . . and, unless the owner or publisher is able and disposed to bring competent evidence to satisfy the judge [that the material published is not scandalous or defamatory] his newspaper or periodical is suppressed and further publication is made punishable as a contempt. This is the essence of censorship." *Id.* at 713, 51 S.Ct. at 630.

91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); and *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

**5.** The Minnesota statute also provided for the abatement, as a public nuisance, of any business engaged in producing, publishing, circulating, possessing, selling or giving away, ". . . an obscene, lewd and lascivious newspaper, magazine, or other periodical . . ." *Id.*, 238 U.S. at 702, 51 S.Ct. at 626. This provision was not in issue.

Thus, since at least *Near*, the prohibition of future unde-termined publication or exhibition, based upon past activi-ties, is an obvious prior restraint, and it has been properly said that as only a judicial determination in an adversary proceeding insures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determina-tion of obscenity suffices to impose a valid final restraint.[6] *United States v. Thirty Seven Photographs*, 402 U.S. 363, 367, 91 S.Ct. 1400, 1403, 28 L.Ed.2d 822, 828 (1971); *Freed-man v. Maryland*, supra, 380 U.S. at 58, 85 S.Ct. at 739, 13 L.Ed.2d at 654. There can be little doubt that a permanent injunction, as that at bar, is a "final restraint."

We observe, then, that such proceedings, to be valid, must be restricted to materials already judicially determined to be obscene, and if those proceedings include a blanket ban on future publication, sale, distribution or exhibition of materials not yet determined to be obscene, such ban is constitutionally infirm.

In Pennsylvania, the rule is the same, and a brief review of several cases is in order. In the most recent of these, *Ranck v. Bonal Enterprises, Inc.*, 467 Pa. 569, 359 A.2d 748 (1976), the District Attorney brought an action in equity to enjoin Appellant from exhibiting, selling or distributing certain named publications, and "any other similar maga-zines or other works." The Chancellor entered an ex parte preliminary injunction, enjoining Appellant from ".  .  . selling  .  .  . distributing  .  .  . [or] exhibiting .  .  . any obscene literature, book, magazine  .  .  . or any obscene article  .  .  ." A jury trial was held, and the jury found approximately 13 specific publications to be obscene. The Chancellor adopted the findings of the jury

6. The court has permitted the imposition of temporary restraints, limited in purpose and duration, as, for example, the seizure of a film for the purpose of preserving and using it as evidence in a criminal obscenity prosecution, so long as there is a prompt judicial determi-nation following seizure. *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Times Film Corp. v. Chicago*, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961); *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957).

and found the named publications obscene. In his final Decree the Chancellor not only enjoined the exhibition, sale and distribution of the named publications, but also permanently enjoined Appellant from operating the bookstore by continuing the preliminary injunction.

The Supreme Court of Pennsylvania reversed, saying as it did:

> ". . . the preliminary injunction . . . prohibited not only the sale, exhibition, and distribution of the publications named in the complaint, but also that of a wide variety of unnamed 'obscene' materials. Such a prohibition was overly broad in its insensitivity to the narrow line between obscenity and protected speech . ."

*Id.* at 575, 359 A.2d at 751.

In *Commonwealth ex rel. Davis v. Van Emberg*, 464 Pa. 618, 347 A.2d 712 (1975), the Commonwealth instituted criminal proceedings under the former 18 Pa.C.S.A. § 5903(a), predecessor to the instant statute, against Appellant, proprietor of an "Adult Book Store," and one of his employees. While the criminal proceedings were pending, the District Attorney sought pursuant to 18 Pa.C.S.A. § 5903(h) and was granted an ex parte injunction prohibiting Appellant ". . . from conducting, maintaining or operating any business activity . . ." at his premises. No notice or rule to show cause was served on Appellant or his employee. At a later unrecorded hearing, not attended by Appellant, the District Attorney testified and apparently introduced specific publications and materials into evidence. A further "adversary" hearing was then held, attended by Appellant, and at the conclusion of the hearing, the court entered an Order continuing the preliminary injunction and enjoining Appellant from distributing ". . . the books, papers, magazines and all other materials and exhibits referred to in the testimony taken in this matter . . ." *Id.*, 464 Pa. at 620, 347 A.2d at 713.

Treating first the invalid nature of the ex parte procedure, the Supreme Court then struck down the final injunction entered following the adversary hearing:

"The ex parte injunction enjoined defendants from '. . . operating any business activity at the premises.' The later decree issued after the hearing was not much more specific. The record indicates that there was a variety of books, magazines and other items, not established to be obscene, sold in this store. There is no basis in the record before us upon which the chancellor could have found that every item in the store was obscene and all sales properly enjoinable. The injunction is manifestly invalid on its face because of its failure to specify with particularity what materials were obscene and to limit its mandate to affect only those so designated. The broad prohibition of this decree, enjoining all business activity, cannot be upheld." *Id.*, 464 Pa. at 623–24, 347 A.2d at 715.

At bar, we comprehend no distinction between the substantive effect of the words "of like kind or similar kind" and the impact of the injunctions found constitutionally invalid in *Ranck* and *Van Emberg*, supra, or the procedures found defective in *United States v. Thirty Seven Photographs*, supra, *Marcus v. Property Search Warrant*, supra, *Quantity of Books v. Kansas*, supra, and *Freedman v. Maryland*, supra. The Decree of the Lebanon County Court by the use of these words, endeavored to impose a final restraint upon publications and films not yet determined to be obscene in a judicial proceeding. This it may not do.

■ We finally note that Appellee at bar suggests in his brief that our holding today will "require that every item to be enjoined . . . be brought before the court in the equity trial . . .," Appellee's brief at 8. That is precisely what we hold, and it is not enough to suggest, as does Appellee, that the finding of a "specific sample" as obscene is sufficient to permit a defendant to measure his future conduct against that "sample." It must be remembered that we are not dealing with a routine sale of fungible goods by sample. Rather, we are concerned with the essential right to communicate freely, so long protected by the Constitutions under which we exist. It is surely not asking too much to require that before such right be infringed, the allegedly

offensive communication be tested and declared unprotected by judicial authority following an adversary proceeding.

## B.

### Language of the Injunction

As corollary arguments, Appellants assert that (1) the language "of a like kind or similar kind" violates the principal that to be enforceable, an injunction must specify with sufficient clarity and precision the acts being restrained [7], and (2) the language violates the statute as well which assertedly limits the injunctive power to specifically named and identified materials. 18 C.P.S.A. § 5903(g). In view of our determination that the cited language violates the Constitutions of Pennsylvania and the United States, we need not consider these contentions.

## II.

The Corporate Appellant also contends that the language of the injunction purporting to enjoin its agents, servants and employees, is of no effect, and the individual Appellants advance the same contention with respect to the language purporting to enjoin their "agents, servants and employees" and "any person acting on [Appellants'] behalf." The Appellants' arguments are based upon a dual foundation: (1) the Crimes Code permits the issuance of an injunction only after written notice and hearing, and only against the defendant named in the action, 18 Pa.C.S.A. § 5903(g), and (2) quite apart from the Crimes Code, an injunction against conduct by persons unnamed, unknown and not parties to the litigation, violates due process. We need only examine the first of these contentions.

---

**7.** See *Ranck v. Bonal Enterprises, Inc.,* supra; *Commonwealth ex rel. Costa v. Boley,* 441 Pa. 495, 272 A.2d 905 (1971); *Apple Storage Co., Inc. v. Consumers Education and Protective Association,* 441 Pa. 309, 272 A.2d 496 (1971); *Collins v. Wayne Iron Works,* 227 Pa. 326, 76 A. 24 (1910); *Mayer & Sons v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 18 Pa.Cmwlth. 85, 334 A.2d 313 (1975).

■ Generally, parties to an injunction action who have knowledge of the Order or Decree issued in the action and thereafter willfully participate in a violation of it provisions are subject to punishment for their contumacious acts. Persons *not* parties to the action are also bound to observe the restrictions of an injunction, when the same are known to such persons, to the extent that they must not aid or abet its violation by others, and if such persons are within the class whose conduct is intended to be restrained, they may not themselves violate the Order or Decree if its terms are known to them. 43 A *C.J.S.* Injunctions § 296; 42 *Am. Jur.2d*, Injunctions §§ 319, 320; *P.L.E.* Injunctions § 134.

■ Thus it has been held that although an injunction has issued only against a corporation or an unincorporated association, the injunction may be enforced by proceedings against officials of the corporation or association who know of the Order and violate its provisions. *Federal Trade Commission v. Standard Education Society*, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937); *Altemose v. Building and Construction Trades Council*, 449 Pa. 194, 296 A.2d 504 (1972); *Americans Be Independent v. Commonwealth of Pennsylvania*, 14 Pa.Cmwlth. 179, 321 A.2d 721 (1974); *Sperry & Hutchinson Co. v. McKelvey*, 64 Pa.Super. 57 (1916). As the Commonwealth Court observed in *Americans Be Independent*, supra, a corporation acts only through its officers, agents, representatives and employees, and if such persons violate the mandate of an injunction with knowledge of its terms, they may be punished in contempt proceedings. *Id.*, 14 Pa.Cmwlth. at 190–91, 321 A.2d at 727.

■ It thus becomes apparent, without reference to the statute at bar and under general law, that the words "agents, servants and employees" and "any persons acting on your behalf" as set forth in the Decree below are, at the very least, surplusage and unnecessary.

If the words do have significance, however, they are obviously at odds with the plain language of the Crimes Code. Section 5903(g) provides:

" . . . The court shall issue an injunction only after written notice and hearing *and only against the defendant to the action . . .*"

As we are all aware, every statute shall be construed, if possible, to give effect to all its provisions, 1 Pa.C.S.A. § 1921(a), and we must presume that the General Assembly when it enacted the statute at bar, intended the *entire* statute to be effective and certain, 1 Pa.C.S.A. § 1922(2).

The statute permits an injunction to issue against the "defendant to the action[8]." The "action" is of course the suit in equity commenced by filing a complaint against named defendants. It is thus apparent that persons or entities not named as defendants in the complaint may not under Section 5903(g) be enjoined, and any attempt to do so is a nullity. Under either approach, the language should be stricken[9].

Accordingly, the Order and Decree of the Court of Common Pleas of Lebanon County, dated January 13, 1978, is hereby modified by striking therefrom the words " . . . and any other book or magazine of the like or similar kind . . .", " . . . the foregoing injunction shall also apply to movies and pictures of a like kind or of a similar kind . . .", " . . . or a like or similar kind . .", " . . . its agents, servants and employees . . .", and " . . . your agents, servants and employees or any person acting in your behalf . . .", and as modified, is hereby affirmed.

8. It is instructive to note, as Appellants point out, that Section 5903(h) of the Act of 1972, Dec. 6, P.L. 1482, No. 334, 18 Pa.C.S.A. § 5903(h), the predecessor of Section 5903(g) contains no such specific limitation upon the issuance of an injunction.

9. Although we need not discuss the issue, we note that an Order issued in the area of First Amendment rights, as at bar, must be couched in the narrowest terms that will accomplish the pin–pointed objective permitted by constitutional mandate and the essential needs of the public order. *Carroll v. Commissioners*, 393 U.S. 175, 184, 89 S.Ct. 347, 353, 21 L.Ed.2d 325, 332–33 (1968). And see *Altemose v. Building and Construction Trades Council*, supra, 449 Pa. at 212, 296 A.2d at 506.