## Austin *v.* Converse, Appellant.

*Nuisance—Operation of manufacturing plant—Noise, vibration and smoke—Manufacturing neighborhood—Injunction—Equity.*

While noise from a factory is an inconvenience and discomfort to adjoining property holders yet where it is of a class incident to the neighborhood when the complainant went into it, and not materially greater, there is no cause for injunction.

On a bill in equity against a locomotive works complaining of a nuisance, noise, vibration, dirt and smoke, it appeared that for twenty

years prior to the filing of the bill, the works in question had been operated day and night, and that they were situated in a manufacturing neighborhood. About seven years prior to the filing of the bill, the complainant leased a residence directly across a street from the works, and used the same as a boarding house. Four years prior to the filing of the bill, the defendant erected a new building opposite a part of complainant's premises, and in it established a plant for riveting by pneumatic tools. This work was conducted day and night. Plaintiff continued in the occupation of the residence until the time of the filing of the bill and thereafter, without any material reduction in rent. In the year prior to the filing of the bill, complainant's sister purchased the house, and was the owner at the time of the trial. *Held*, that the evidence was not sufficient to justify the court in granting an injunction.

Argued March 29, 1907. Appeal, No. 100, Jan. T., 1907, by defendant, from decree of C. P. No. 1, Phila. Co., Dec. T., 1905, No. 3,888, on bill in equity in case of Vene R. Austin v. John H. Converse et al., trading as Burnham, Williams & Co. and Baldwin Locomotive Works. Before Mitchell, C. J., Fell, Mestrezat, Potter and Stewart, JJ. Reversed.

Bill in equity for an injunction.

Brégy, J., filed the following adjudication:

This bill is filed by the lessee of a dwelling at Eighteenth and Buttonwood streets against the Baldwin Locomotive Works, complaining that she is annoyed by the noises, smoke, dirt and soot coming from the defendants' works, especially from a new building erected since she became the tenant of premises she now occupies.

FINDINGS OF FACT.

I find that:

1. The complainant, Vene R. Austin, is the lessee and occupant of the premises northeast corner of Eighteenth and Buttonwood streets, in the city of Philadelphia, and that since November 15, 1899, she has there conducted a boarding house. On November 15, 1899, she became the lessee at a rental of $45.00 a month for the term of one year, with no right for a longer period. On January 30, 1902, a new lease, in writing, was made to her for the term of one year, from February 15, 1905, at a rental of $45.00 per month for certain months and $37.00 per month for certain other months. On August 15,

1902, a new lease in writing was made to her for the term of one year, from February 15, 1902, at a rental of $40.00 per month. She remained in possession thereafter, as a tenant from year to year, without reduction of rent.

2. In August, 1905, the sister of the plaintiff purchased the property, which was subject to a mortgage of $4,500, from the then owner, the estate of Vanuxem, subject to said mortgage, for $500. The purchase money was paid in installments.

3. At the time the complainant rented the house, the neighborhood was a manufacturing one. This condition of affairs has existed for many years, and still continues. The residence at the time the plaintiff first rented it, was surrounded by foundries, iron and steel works, and factories of different kinds.

4. In 1902, the defendant erected a new building at Eighteenth and Buttonwood streets, opposite to a part of the complainant's premises. This building is quite large, and in it the work of riveting by pneumatic tools is carried on. This work is done all day and all night, except on Sundays.

5. The noise of this work is very loud, and is distinctly heard in the plaintiff's house, and is detrimental to her comfort and disturbs her sleep and disturbs the comfort and interferes with the sleep of her boarders, notwithstanding the fact that the defendants have placed the machinery for this noisy part of their work at the most remote spot from plaintiff's house that it is possible to place it : to wit : on the side facing the Reading railroad subway.

6. The operation of the defendants' works causes smoke and dirt, which is uncomfortable and annoying to the occupant of the plaintiff's house.

7. In the operation of their machine shops the defendants maintain and operate about 100 riveting machines and other heavy machinery.

These are all the facts that I feel it necessary to find to properly determine the matter, but in answer to requests from plaintiff and defendant I have found others.

### CONCLUSIONS OF LAW.

Briefly stated, the facts found show this condition of affairs : The plaintiff rented a house and began the business of keep-

ing boarders in 1899, in a neighborhood that was practically given up to large manufacturing establishments.

In 1902 the defendants built a new building in addition to their others, replacing the business of some other manufacturing establishment.

The plaintiff now complains of the soot, dirt, smoke and noise coming from these works of the defendants' works, and asks for an injunction.

The defendants' works are run day and night, except on Sundays. I find the plaintiff's and defendants' rights under the law are these:

1. That no necessity having been shown for the running of these riveting machines during the night, the plaintiff is entitled to the rest and sleep usually incident to that portion of the day.

An injunction will therefore issue, restraining the defendants from operating the pneumatic riveting machines between the hours of 8 P. M. and 7 A. M.

2. That as the plaintiff moved into a neighborhood given up to manufacturing, she cannot now insist that the noises and dirt incident thereto must be removed. Her only right is to have the works so run that the usual hours of rest and sleep are not intruded upon.

3. The defendants should pay the costs.

On exception, BRÉGY, J., filed the following opinion:

On the argument, it was urged that the trial judge had made an error in finding that the pneumatic riveting machines were located in the new building (erected just before the bringing of this suit) across the street from the residence of the complainant.

We do not find any exception that raises that question, but, in fairness to the defendants, it should be said that the machines alluded to, and that are enjoined by my conclusions, are not located in that particular building, and never were, but in the rearrangement of their plant, were put in a building facing the Reading railroad subway. As said in the findings of fact, as far removed as possible from the complainant's house.

The fact remains, however, that the running of these ma-

chines all night is annoying, disturbing of sleep and prejudicial to the comfort that all are entitled to, if not to health.

We do not think that the fact that the bill was filed some time after the nuisance began, deprives the complainant of her right to redress.

The defendants were not induced to do anything or incur any expense by the inaction of the complainant. Patience and laches are different things. We do not know of any case that goes so far as to say that the endurance of all-night work in an enormous machine shop for a few years, perhaps in the hope of its eventually stopping, requires one to endure it forever.

The defendants maintain a continuing nuisance of a peculiar kind, and cannot secure a right to go on with it, because it was not immediately enjoined. We do not interfere with the usual and proper use of the works, but only with the improper one. The right " to murder sleep " cannot be acquired by " lapse of time."

The exceptions are dismissed.

*Error assigned* was decree of the court awarding an injunction.

*John G. Johnson*, for appellants.—No injunction should have been granted because of the laches of the appellee in applying for relief: Mayer's Appeal, 73 Pa. 164; Penna. R. R. Co. v. Mullin, 23 W. N. C. 503; Dunmore Borough's Appeal, 1 Monaghan, 567; Miles, Corson Co. v. Young, 29 W. N. C. 256; Heilman v. Lebanon, etc., St. Ry. Co., 175 Pa. 188; Penna. R. R. Co. v. Glenwood, etc., Electric St. Ry. Co., 184 Pa. 227; Becker v. Lebanon, etc., St. Ry. Co., 188 Pa. 484.

*Thomas Diehl*, with him *Jerome Carty*, for appellee.—The right to maintain a nuisance cannot be acquired by prescription: Mills v. Hall, 9 Wend. (N. Y.) 315; Dyer v. Dupui, 5 Wharton, 584; Cooper v. Smith, 9 S. & R. 26; Howell v. McCoy, 3 Rawle, 256; Penna. Lead Co.'s App., 96 Pa. 116; Penna. Schuylkill Valley R. R. Co. v. Reading Paper Mills, 149 Pa. 18; Strickler v. Todd, 10 S. & R. 63; Jones v. Crow, 32 Pa. 398; Hoy v. Sterrett, 2 Watts, 327; McCallum v.

Water Co., 54 Pa. 40; Turnpike Co. v. Piper, 77 Pa. 432; Irving v. Media Boro., 10 Pa. Superior Ct. 132; s. c. 194 Pa. 648.

That a business is lawful will not justify a continuance of it should a nuisance result: Dennis v. Eckhardt, 3 Grant, 390.

The courts have exercised their restaining power in very numerous cases, of which we cite a few : Farrell v. Foster, 34 Legal Int. 88. Operating a trip hammer was enjoined between 7 P. M. and 6 A. M. Wallace v. Auer, 10 Phila. 356. A gold beater was enjoined. Rodenhausen v. Craven, 141 Pa. 546. The beating of carpets was enjoined. Schandein v. Bach, 11 W. N. C. 202. The business of a hog butcher was restrained. Ladies' Decorative Art Club, 22 W. N. C. 75. The operation of a noisy school of art was restrained. Burke v. Myers, 10 W. N. C. 481. A factory which caused noises and reverberation was enjoined entirely on Sundays and from 8 P. M. to 6 P. M. on other days. Dillon v. States, 11 W. N. C. 18. Meat chopping restrained between 8 P. M. and 8 A. M, St. Mark's Church Case, 34 Legal Int. 76 S. C. 222. The ringing of church bells at unseasonable hours and for an unreasonable period of time was enjoined. Briggs v. Vottler, 4 W. N. C. 272. A ten-pin alley was enjoined from operating either by day or night.

There have been a number of recent cases decided by this court: Robb v. Carnegie, 145 Pa. 324; Walters v. McElroy, 151 Pa. 549; Evans v. Reading Chemical Fertilizing Co., 160 Pa. 209; Sullivan v. Steel Co., 208 Pa. 540.

OPINION BY MR. CHIEF JUSTICE MITCHELL, June 25, 1907:

The complainant's bill was based on averments that the extent and mode of operation of respondents' works had been so changed since her moving into the neighborhood as to produce vibration, noise, soot and smoke that made her residence untenantable. The evidence totally failed to establish any branch of the alleged cause of action. The learned judge below negatived all the complaints except that relating to the noise created by certain riveting machines. He did not find that this had been recently increased, but did find that it tended to disturb sleep. He therefore enjoined the running of said machines between 8 P. M. and 7 A. M. Whether this con-

clusion was necessitated by the evidence must depend on a general review of the established facts of the case. From the findings of fact affirmed by the judge it appeared that the complainant leased the house in 1899. The neighborhood was then and had been for upwards of twenty years a manufacturing one, the residence at that time being surrounded by foundries, iron and steel works and factories of different kinds. "In 1899 and for many years previously, the defendants operated in a way producing more noise and smoke than were produced when the bill was filed, their works on Buttonwood Street to a point within seventy-two feet of Eighteenth Street. No additional noise or dirt or smoke were produced by the operations which were conducted in the new building. On the contrary, all noises, smoke, etc., which could affect the plaintiff, were diminished considerably since 1899." In 1892 "the defendant erected a new building at Eighteenth and Buttonwood Streets, opposite to a part of the complainant's premises. This building is quite large, and in it the work of riveting by pneumatic tools is carried on. This work is done all day and all night, except on Sundays. The noise of this work is very loud, and is distinctly heard in the plaintiff's house, and is detrimental to her comfort and disturbs her sleep and disturbs the comfort and interferes with the sleep of her boarders, notwithstanding the fact that the defendants have placed the machinery for this noisy part of their work at the most remote spot from the plaintiff's house that it is possible to place it; to wit: on the side facing the Reading Railroad Subway."

The complainant went into the house in 1899 on a lease for one year, and notwithstanding its inconveniences and discomforts she renewed her lease twice for a year at a time, and has since remained as tenant from year to year without any reduction in rent. It is an additional circumstance not without weight that in 1905, six years after complainant's occupation began, her sister purchased the house and has continued to be the owner.

As already said the learned judge found the facts against all the complaints except that as to the disturbance of sleep by the noise of the pneumatic riveting machines. These were put in their present location in 1902 and this bill was not filed

until 1906. While this delay as the learned judge found, would not estop her, yet it is very strongly persuasive that the complaint is exaggerated. In fact, gross exaggeration is manifest all through the case. It is expressly found as a fact in regard to the general complaint of nuisance from the operation of defendants' works and its increase since complainant's occupation of the house. Although one of the judge's conclusions of law is that no necessity has been shown for the running of the riveting machines at night, yet it is found as a fact that "the works of the defendants have been operated by night in the way they are now operated, for nearly twenty years." A consideration of the whole testimony, in view especially of this pervading exaggeration, compels us to differ with the learned judge below, so far as to hold that while the noise is no doubt an inconvenience and discomfort yet it is of the class incident to the neighborhood when the complainant voluntarily went into and remained in it, and is not sufficiently greater in degree to entitle her to interfere with it.

The decree is reversed, the injunction dissolved and the bill directed to be dismissed.