## Stetter et ux. v. Reliable Silk Manufacturing Company.

*Henry M. Bruner, George T. Hambright* and *John E. Malone,* for plaintiffs. *Harris C. Arnold* and *John A. Coyle,* for defendant.

GROFF, J., July 5, 1930.—

### Pleadings.

The pleadings in this case consist of a bill in equity, filed Nov. 1, 1929; an answer, filed Dec. 20, 1929, denying the allegations in the plaintiffs' bill and setting up new matter, and a reply to the new matter alleged in defendant's answer, filed Jan. 30, 1930. The issue raised by the pleadings is—Does the operation of the defendant's mill constitute such a nuisance as should be restrained during the hours of rest?

### Findings of fact.

1. The plaintiffs in the bill own a dwelling house known as No. 1213 Manor Street, in the Borough of Columbia, Lancaster County, Pennsylvania, erected on a lot containing in front on said Manor Street 25 feet, and extending in depth of that width, northward, 190 feet to an alley.

2. The defendant owns and operates a silk mill, located on the northeast corner of Manor and Twelfth Streets, in the said Borough of Columbia, erected on a lot immediately adjoining plaintiffs' premises on the west, con-

taining 127 feet in front on Manor Street, and extending in depth of that width, northward, 190 feet to an alley.

3. The plaintiffs' dwelling was erected in 1895, was conveyed to the plaintiffs on July 28, 1920, and has been used as a dwelling since its erection.

4. On the defendant's lot there was erected, in 1892, a four-story brick building, 50 by 100 feet, on the northeast corner of Manor and Twelfth Streets, which has been used for manufacturing purposes since its erection, and since 1918, or before that, for the manufacture of silk.

5. The west side of the said four-story building was 84 feet from the east side of plaintiffs' dwelling prior to 1924.

6. In 1924 the defendant erected a building 76 by 170 feet, 18 feet high, the east side of which is built on the line between the plaintiffs' and defendant's properties and is eight feet away from the main dwelling of the plaintiffs and slightly more from the attachment thereto in the rear, and extends entirely to the rear of plaintiffs' property.

7. The east side of this building contains nine pilasters, or columns, filled in between with eight sections of windows, each about fourteen feet square, constructed of double-thick factory glass. In each of these sections are contained three windows, each about three and one-half feet square. They swing in or out on a horizontal rod, or fastening, placed in the main sections of the window.

8. These windows, when opened, extend over plaintiffs' land.

9. Prior to the time of the erection of the new addition to defendant's mill it contained 156 looms.

10. The new and the old building now contain 231 looms, 131 of which are in the new portion, and 100 of which are in the old portion, of the building.

11. These looms weigh about 500 pounds each and are operated by a one-half horsepower electric motor, the total horsepower used to operate the mill when in full operation being approximately 115.

12. Certain tests were made as to vibration, and at the time these tests were made by Harry Baylinson, the witness, and others about 25 horsepower was being used. He is an experienced silk manufacturer and says that the vibration would not be any more than a street car. We, therefore, find as a fact that there is vibration from the operation of the looms.

13. The looms are operated with two shuttles operating across the loom. These shuttles are caught in rawhide or rubber picks.

14. The shuttles are impelled to and fro by a stick which is attached to a strap to deaden the impact.

15. The 231 looms contain 462 shuttles, with 462 of these sticks impelling them to and fro.

16. These shuttles are impelled with such force that if they missed the picks they would go through a window or might kill a man if they hit him.

17. The defendant operates its mill from 7 o'clock on Monday morning continuously until noon on Saturday, that is, night and day.

18. The vibrations from defendant's mill, when operated in full force, shake the plaintiffs' house so that the windows, when locked, must be wedged to keep them from rattling. Fruit jars in the cellar work together and jingle, and the glassware works together in the closets and becomes cracked and marred.

19. The constant vibration and noises have impaired the nerves and health of one of the plaintiffs, Edward Stetter.

20. The noises from the silk mill can be heard in the plaintiffs' house throughout the night, disturbing sleep and rest and affecting the nerves of the entire household.

21. The noises and vibration penetrate the plaintiffs' house when the outside windows are closed and keep the plaintiffs from sleeping.

22. Plaintiffs were not affected by the noise, vibration or thuds from the operation of the original factory.

23. The noise from the operation of the said mill is so great that it disturbs people on the opposite side of the street when sitting on their porch.

24. The immediate section in which the plaintiffs' house and defendant's mill are situated is not strictly a residential section. It has the defendant's mill and a brush factory, which is not being operated, in the immediate vicinity.

25. The buildings of the Malleable Castings Company, the hot-dog stands and the gas stations on the Lincoln Highway are in West Hempfield Township and not in this immediate vicinity.

26. The noise from the operation of defendant's mill, so far as it affects plaintiffs, is greatly increased when the plant is operated with its windows on the east side open.

27. Public enterprises have not so far invaded this locality as substantially to interfere with its quiet and cleanliness.

*Discussion.*

The plaintiffs in this bill seek to restrain the defendant from operating its silk mill in a manner so as to disturb, affect and interfere with the reasonable quiet, enjoyment and comfort of the plaintiffs' home.

It seems that prior to 1924, that is, from about 1898 or 1899, the defendant and its predecessors in title operated a silk mill on the northeast corner of Twelfth and Manor Streets, in the Borough of Columbia, Lancaster County, Pennsylvania. This mill was a four-story brick building, 50 by 100 feet in dimensions, the east side of which was 76 feet west of plaintiffs' west line and 84 feet west of the west wall of plaintiffs' main building.

In 1924 the defendant erected an addition to its mill, being one story high and 76 by 170 feet in dimensions, making the east side of its plant eight feet from the plaintiffs' west wall. It increased the number of its looms from 156, which was the number in the original building, to 231, and rearranged them so that the old building now contains about 100 looms, and the new building 131 looms. These looms weigh about 500 pounds each and are each operated by a one-half horsepower electric motor. Each loom is worked with two shuttles crossing each other, caught in a pick and propelled to and fro by a stick arranged in some mechanical way. The east side of this building is composed of nine pilasters, filled in between with eight sections of windows, and each of these sections contains three windows, about three and one-half feet square, which were kept open when the necessity for ventilation existed, prior to the time of filing of this bill, and a portion of them, at least, have been open at different times since the filing of this bill.

The plaintiffs never appealed to the court for relief from the time of the construction of the new portion of the mill until the present bill in equity was filed. Just what controversy the parties may have had since the erection of the new portion of the mill does not appear in the evidence. However, some indication of it dripped into the trial or argument of the case, but we will disregard it because it has not been proven.

The first question that arose in our mind was: Are the plaintiffs estopped by lapse of time from obtaining the relief sought?

In the case of Collins *v.* Wayne Iron Works, 227 Pa. 326, the plaintiff erected her house in 1899 and the defendant's plant had gone up in 1902 with-

out protest from the plaintiff. The noise, however, had been increased in 1906 and the plaintiff filed her bill in the following December of that year. The court granted the relief prayed for.

Each case depends largely upon its own facts, and we can see no reason why, even if the plaintiffs in this case have been long suffering, they should not now, if these noises have become intolerable, be entitled to the relief sought.

In Austin v. Converse, 219 Pa. 3, 9, Mr. Chief Justice Mitchell said that where the manufacturing plant had been put in its present location in 1902, and the bill was not filed until 1906, this delay would not estop plaintiff.

We have found as a fact that the neighborhood in which plaintiffs' property is located cannot be said to be strictly residential. On the other hand, it has not been given over to industrial purposes, there being no manufacturing plant in the vicinity except the one in question and a brush factory, some two squares away, which is not being operated.

In Tobin v. Kolb, 88 Pa. Superior Ct. 80, 83, the court, quoting from Mitchell v. Guaranty Corp. et al., 283 Pa. 361, said:

"Where business enterprises, however, have so far invaded a residential locality as to substantially interfere with its quiet and cleanliness, it can no longer be classed as residential; but the test is as to the immediate neighborhood and not remote districts. . . . 'So long as the more remote industrial developments have not destroyed the quiet and cleanliness of plaintiffs' homes, they are entitled to protection from this immediate encroachment, which does.'"

This section of the Borough of Columbia, under the test thus set forth, cannot be said to be an industrial section, and we feel that the defendant, having increased the size of its factory and brought it to within eight feet of the plaintiffs' house, and having placed in its new factory 131 looms, has made plaintiffs miserable, uncomfortable and unhappy, and that the operation should be restrained so far as the night-time is concerned.

Judge Walling in Krocker et al. v. Westmoreland Planing Mill Co., 274 Pa. 143, 146, said:

"Noise which constitutes an annoyance to a person of ordinary sensibility to sound, so as to materially interfere with the ordinary comfort of life and to impair the reasonable enjoyment of his habitation to him, is a nuisance."

In Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, it is decided:

"The right of a man to use and enjoy his property is as supreme as his neighbor's, and no artificial use of it by either can be permitted to destroy that of the other."

In Collins v. Wayne Iron Works, 227 Pa. 326, we find in the syllabus that:

"No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells."

The objection in this case is not to the carrying on of the business in this particular place. Plaintiffs knew the original factory was there when they purchased their property. Seeing it there when they bought their property, they were subject to such inconveniences as then existed. Their real ground of action, however, is that since they became owners the defendant has increased the capacity of its plant and has operated it day and night in such a way as to create a nuisance. The testimony, in our mind, fully warrants such a conclusion. We have concluded that certain conditions have existed for some time past which justify plaintiffs in asking for relief.

In Scott et ux. v. Houpt, 8 Kulp, 42, it was said:

"That merely discomforting noises which arise in the ordinary prosecution of a lawful trade or calling do not amount to a nuisance which will be enjoinable. To call for this, they must be of such a character as to inflict actual physical injury upon the complainant or his family, as by disturbing them during the hours usually given to rest, thereby affecting their health and ordinary comfort, or must otherwise occasion some direct and sensible damage to complainant's property or its beneficial use."

In Ladies' Decorative Art Club's Appeal, 22 W. N. C. 75, Thayer, P. J., said in the court below:

"The law upon this subject is well settled and very plain. Where a noisy nuisance is complained of, it is a question of degree and locality. If the noise is only slight and the inconvenience merely fanciful, or such as would only be complained of by people of elegant and dainty modes of living, and inflicts no serious or substantial discomfort, a court of equity will not take cognizance of it. No one has a right to complain that his next-door neighbor plays upon the piano at reasonable hours or of the cries of children in his neighbor's nursery, nor of any of the ordinary sounds which are commonly heard in dwelling houses. On the other hand, if unusual and disturbing noises are made, and particularly if they are regularly and persistently made, and if they are of a character to affect the comfort of a man's household or the peace and health of his family and to destroy the comfortable enjoyment of his home, a court of equity will stretch out its strong arm to prevent the continuance of such injurious acts."

In Dennis v. Eckhardt, 3 Grant's Cases, 390, it was held that "Where a lawful business is carried on at unreasonable hours, to the annoyance and discomfort of neighbors and until it becomes a nuisance, equity will interfere by injunction to restrain it."

It will not do for the defendant here, who has increased the number of looms in its mill from 156 to 231 and who has brought 131 of those looms 76 feet nearer to the plaintiffs' property than they were in the original mill, and who operates them practically upon the line of plaintiffs' property, sometimes with open windows, night and day, to set up the rule of balancing equities.

It seems to us that a further discussion of this case would be futile. The facts show that the noises and vibrations have been greatly increased since the defendant built the new part of its factory; that it interferes with the rest of the plaintiffs and their family during the night; that it has impaired the health of Mr. Stetter, one of the plaintiffs, and that it has affected the nerves of the entire household. The testimony, too, shows that the defendant's windows, when opened, open over the land of the plaintiffs, and that when they are open the noises and vibration are greatly increased.

### Conclusions of law.

1. That the defendant's business is a legal business.

2. That being operated in the neighborhood in which it is, during the night, disturbing the peace and comfort of, and materially interfering with and impairing the reasonable enjoyment of, its neighbor's habitation, causing one of them to become ill, interfering with rest and affecting the nerves of plaintiffs' household, it becomes a nuisance which should be restrained from being operated during the night between the hours of 6 P. M. and 6 A. M.

### Decree nisi.

And now, July 5, 1930, it is ordered and directed that the defendant, its agents and employees, be perpetually enjoined and restrained from operating

the addition to its silk mill, and the machinery therein contained, built in 1924, being 76 feet in front and extending in depth of that width northward 170 feet, adjoining plaintiffs' property on the west, between the hours of 6 P. M. and 6 A. M.

GROFF, J., Sept. 20, 1930.—The defendant in the above case filed exceptions to the findings and decree of the court in the above matter. The said exceptions were heard by the court *in banc* on Sept. 15, 1930, and, after due consideration, the exceptions are overruled and the decree is confirmed and made final.                              From George Ross Eshleman, Lancaster, Pa.