# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| North Strabane Township | : **CASES CONSOLIDATED** |
| | : |
| v. | : No. 958 C.D. 2023 |
| | : |
| Majestic Hills LLC, and | : |
| JND Properties, LLC | : |
| | : |
| Appeal of: Lakemont Gardens, LLC | : |
| | |
| North Strabane Township | : |
| | : |
| v. | : No. 959 C.D. 2023 |
| | : |
| Majestic Hills, LLC, and | : |
| JND Properties, LLC | : |
| | : |
| Appeal of: Shari DeNardo | : |
| | |
| North Strabane Township | : |
| | : |
| v. | : No. 960 C.D. 2023 |
| | : |
| Majestic Hills LLC, and | : |
| JND Properties, LLC | : |
| | : |
| Appeal of: Ashwood Commons LLC | : |
| | |
| North Strabane Township | : |
| | : |
| v. | : No. 961 C.D. 2023 |
| | : |
| Majestic Hills, LLC, and | : |
| JND Properties, LLC | : |
| | : |
| | : |
| Appeal of: Ashwood Land | : |
| Partners, LP | : |

North Strabane Township       :
       :
     v.         :  No. 963 C.D. 2023
       :
Majestic Hills LLC, and       :
JND Properties, LLC       :
       :
Appeal of: Joseph N. DeNardo     :

North Strabane Township       :
       :
     v.         :  No. 964 C.D. 2023
       :
Majestic Hills, LLC, and       :
JND Properties, LLC       :
       :
Appeal of: JND Properties, LLC     :

North Strabane Township       :
       :
     v.         :  No. 965 C.D. 2023
       :  Argued: October 8, 2024
Majestic Hills, LLC, and       :
JND Properties, LLC       :
       :
Appeal of: Joseph N. DeNardo, Shari :
DeNardo, Lakemont Gardens, LLC,  :
Ashwood Land Partners, LP and    :
Ashwood Commons, LLC       :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge

OPINION BY JUDGE WOJCIK          FILED: December 18, 2024


     In these consolidated appeals arising from litigation following multiple catastrophic landslides at a residential development, Designated Appellants Joseph N. DeNardo (Mr. DeNardo) and Shari DeNardo (Mrs. DeNardo) (collectively, the

DeNardos), JND Properties, LLC (JND), Lakemont Gardens, LLC, Ashwood Land Partners, LP, and Ashwood Commons, LLC (collectively, Appellants) seek review of two orders of the Washington County Court of Common Pleas (trial court), dated May 25, 2023, and July 12, 2023. The May 25, 2023 Order (Preliminary Injunction Order) granted preliminary injunctive relief against JND and the DeNardos and required them to list all real property holdings, which they possess, in whole or in part, including property holdings of Appellants Lakemont Gardens, LLC, Ashwood Land Partners, LP, and Ashwood Commons, LLC (collectively, the Business Entities), prohibited the dissolution of their assets, and directed the net proceeds derived from the sale of any of their properties, including properties held by the Business Entities, to be held in a court-supervised escrow account until the trial court issued a final order on North Strabane Township's (Township) pending contempt motion. Reproduced Record (R.R.) at 1498a-1500a. The July 12, 2023 Order (Contempt Order) found Majestic Hills, LLC (Majestic Hills), JND, and the DeNardos in contempt of an October 15, 2021 Consent Order, levied sanctions against them with the ability to purge, and again directed the proceeds derived from the sale of any of their properties, including properties held by the Business Entities, to be deposited into a court-supervised escrow account.[1] *Id.* at 1505a-30a.

Also before this Court is the Township's Omnibus Application to Dismiss and/or Quash Appeals (Application) seeking to dismiss Appellants' appeals from the Preliminary Injunction Order as moot or, in the alternative, quash the appeals of the Business Entities, on the basis that they lack standing. Designated Appellee Department of Environmental Protection (DEP) joins the Application.

---

[1] Contempt orders are subject to immediate appeal when they impose sanctions. *Office of Attorney General, Bureau of Consumer Protection v. Lubisky*, 88 A.3d 328, 333 (Pa. Cmwlth. 2014). Injunction orders are appealable as of right pursuant to Pa.R.A.P. 311(a)(4).

Upon review, we grant the Application and dismiss the appeals from the Preliminary Injunction Order as moot and superseded by the Contempt Order (Docket Nos. 958, 959, 960, 961, 963, and 964 C.D. 2023). As to the remaining appeal from the Contempt Order (Docket No. 965 C.D. 2023), we affirm.

## I. Background

In 2005, Majestic Hills and JND commenced construction activities associated with the Majestic Hills development project (Development), which involved the development of lots for single-family homes in the Township, which is situated in Washington County, Pennsylvania. As of 2017, Majestic Hills is wholly owned by JND, which in turn is wholly owned and controlled by the DeNardos, who are husband and wife, with each owning 50%. R.R. at 810a, 822a. Mr. DeNardo is the managing member of JND. *Id*. at 907a.

The Development, which was completed in 2015, had a history of compliance issues with state and local regulations for, *inter alia*, the failure to stabilize areas of earth disturbance and control stormwater. In 2018, several landslides occurred at the Development threatening homes, roads, and Commonwealth waters. Three homes were condemned, and multiple families were forced to evacuate their homes. Significant slope movement continued to affect the community and threatened a main sewer line that serviced 200 homes.

After the landslides, DEP issued several notices of violation and compliance orders. On September 25, 2018, and October 11, 2018, DEP issued compliance orders directing Majestic Hills to restore and stabilize slopes throughout the Development and to implement a DEP-approved plan for the management of post-construction stormwater to prevent future slope movement and flooding. On October 15, 2020, DEP issued another compliance order requiring Majestic Hills to

4

hire a geotechnical engineer to investigate the slopes and provide a detailed report and recommendation on how to restore and stabilize the slopes.

In the interim, the Township incurred heavy costs repairing sewer line infrastructure, stabilizing the hillside at the Development, and compensating condemnees. Following the initiation of multiple lawsuits at both the state and federal levels, Majestic Hills filed for bankruptcy protection in May 2020.

On February 8, 2021, the Township filed a complaint in the trial court in the nature of a declaratory judgment action, which it amended April 12, 2021. The amended complaint named Majestic Hills, JND, and the DeNardos as defendants based on their alleged failure to stabilize the slopes of the Development and other issues stemming from Majestic Hills' history of regulatory violations and noncompliance with DEP compliance orders. The Township sought a declaration that all named defendants were jointly and severally required to comply with DEP's compliance orders, which were previously issued only to Majestic Hills, to undertake certain repair obligations. On May 10, 2021, the Township also filed a motion for preliminary injunction seeking immediate compliance and warning of continued slope movement and potential failure of the sanitary sewer line. DEP intervened. A hearing was scheduled.

On October 15, 2021, the date of the scheduled preliminary injunction hearing, the parties entered a Consent Order. The Consent Order provided:

> 1. The compliance orders issued by the DEP on October 11, 2018[,] and October 15, 2020 (the "Compliance Orders") that are the subject of this action are final and unappealable orders.
>
> 2. Majestic Hills and JND shall timely supplement and modify their investigative activities and proposed recommendations as deemed necessary by DEP to comply

5

with the Compliance Orders, the Clean Streams Law,[2] and the implementing regulations promulgated thereunder. On or before October 22, 2021, Majestic Hills and JND shall provide to DEP supplemental geotechnical analysis to support their proposed repair and/or remediation activities to the slope areas and sanitary sewer system in the areas identified in the October 15, 2020 Compliance Order (the "Repair Work").

3. By or before November 1, 2021, Majestic Hills and JND shall commence additional boring at locations in the areas identified in the Compliance Orders and as approved by DEP.

4. By or before November 30, 2021, Majestic Hills and JND shall provide a comprehensive geotechnical analysis and proposed scope of the repair and remediation activities in the areas identified in the Compliance Orders to DEP and [the Township] for approval by DEP. Such proposed scope shall fully address all aspects of the Compliance Orders, the Clean Streams Law, and the implementing regulations promulgated thereunder as approved by DEP.

5. Majestic Hills and JND shall provide responses to any requests for additional information from DEP within seven days. If Majestic Hills or JND believe additional time is required, they may seek an extension from DEP; such request will not be unreasonably denied.

6. DEP reserves all rights to approve or reject any aspect of the proposed scope of repair or remediation activities submitted by Majestic Hills and JND. Majestic Hills and JND shall timely provide a revised proposed scope of such repair or remediation activities in the event any aspect of the proposed scope of such repair or remediation activities is rejected.

7. Majestic Hills and JND shall timely perform the Repair Work upon approval by the DEP.

---

[2] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001.

6

8. Majestic Hills and JND shall be jointly and severally responsible to complete the Repair Work as approved by the DEP in furtherance of this Order regardless of whether Majestic Hills' bankruptcy plan is approved or whether the amount of funds allocated to the Repair Work in the bankruptcy action is insufficient to pay for the Repair Work.

9. DEP's written approval of the Repair Work shall be incorporated into this Order and enforceable jointly and severally as against Majestic Hills and JND. All other repair and remediation work approved by DEP in writing shall be incorporated into this Order and enforceable against Majestic Hills.

10. [The] Township and the DEP reserve all rights to seek further orders from this Court, including but not limited to orders for contempt, in the event Majestic Hills or JND fails to fully comply with this consent order. DEP reserves all rights to take additional enforcement action against any party to ensure compliance with all applicable statutes and regulations.

11. In the event of a failure of the sanitary sewer line between now and the completion of the approved repair and remediation activities, Majestic Hills and JND shall immediately provide an emergency repair sufficient to ensure no discharge of pollutants into any waters of the Commonwealth and no interruption of service to homeowners. Majestic Hills and JND shall immediately notify DEP and [the Township] of all actions taken under this paragraph. DEP and [the Township] reserve the right to direct--and Majestic [Hills] and JND shall implement--reasonable modifications to the emergency repairs taken.

12. [The DeNardos] are hereby dismissed from this action.

13. The entry of this [C]onsent [O]rder shall not be construed as, and does not operate as, an admission of liability by Majestic Hills or JND as to any claims, legal theories, allegations or demands set forth in this matter by [the Township] or DEP. Majestic Hills and JND reserve all rights and defenses available to them.

7

R.R. at 571a-73a.

From October 2021 to February 2022, Majestic Hills and JND submitted multiple repair and remediation proposals to DEP, all of which were rejected as deficient. R.R. at 1401a-02a. In April of 2022, the sanitary sewer line behind properties located at 2055 and 2057 Majestic Drive separated, causing the release of raw sewage down a hillside in the Development. *Id.* at 1402a. JND implemented a temporary bypass pump to maintain sanitary sewer service to residents. *Id.* In May of 2022, DEP conditionally approved a revised proposal to repair the slope behind these two properties and requested construction plans from Majestic Hills and JND. *Id.* at 1403a. In June 2022, DEP sent deficiency letters to Majestic Hills and JND that the submitted construction plans reflected a significantly reduced scope of repair inconsistent with the conditional approval. *Id.* at 1404a. DEP requested revised construction plans by June 22, 2022.

Majestic Hills and JND did not respond to DEP's request for revised construction plans and failed to respond to DEP's request for repair and remediation plans for other slopes subject to the Consent Order. *North Strabane Township v. Majestic Hills, LLC, and JND Properties, LLC* (Pa. Cmwlth., Nos. 958, 959, 960, 961, 963, 964 and 965, C.D. 2023, filed October 6, 2023) (*North Strabane Township*), slip op. at 4-5; *see* R.R. at 908a-09a, 944a. On June 28, 2022, JND threatened to cease funding for the bypass pump on the sanitary sewer line. *Id.* at 5; *see* R.R. at 911a.

In response, the Township, joined by DEP, filed an Emergency Motion for Immediate Injunctive Relief and for a Finding of Contempt (contempt motion) based upon Majestic Hills' and JND's continuing noncompliance with the Consent Order. While a decision on the contempt motion was pending, on May 12, 2023, the

8

Township, joined by DEP, filed a preliminary injunction motion requesting that the trial court prohibit JND and the DeNardos from dissipating their assets in anticipation of civil liability or contempt sanctions.

By Preliminary Injunction Order, dated May 25, 2023, the trial court granted the motion and enjoined JND and the DeNardos from "dissolving their assets in anticipation of, and for the purpose of, avoiding their responsibilities to discharge any civil liability or contempt sanctions that may be determined against them . . . ." R.R. at 1498a-99a. The order directed JND and the DeNardos to disclose all real property holdings in which they possess actual or equitable ownership, in whole or in part, including the property holdings of the Business Entities. *Id*. at 1499a. The order directed them to deposit into a court-monitored escrow account all proceeds from the sale of any real estate holdings, including the sale of assets of other companies they own and control, including the Business Entities. R.R. at 1499a-1500a. Specifically, the order stated, in relevant part:

> Accordingly, until such time as the Court issues a final order on [the] Township's pending [contempt motion], [JND,] [Mr.] DeNardo, and/or [Mrs.] DeNardo are ORDERED to place the net proceeds (*i.e.* gross proceeds of any sales less all reasonable, necessary and customary costs associated therewith, and payment of any encumbrances to include any mortgage related to the property) derived from any and all sales, transfers, and/or assignments of any and all real property holdings in which they possess, in whole or in part, an actual or equitable ownership interest, including any entity in which [JND], [Mr.] DeNardo and/or [Mrs.] DeNardo hold an ownership interest, including but not limited to property holdings of [the Business Entities,] within five (5) business days from the receipt of such funds into an interest bearing Court supervised escrow account. This requirement specifically applies to, but is not limited to, the sale of the real property located at 1301 Ashwood Drive.

*Id.* The trial court granted the injunction to maintain the status quo until it ruled on the contempt motion. *Id.* at 1550a. From this decision, Appellants each filed separate notices of appeal (Docket Nos. 958, 959, 960, 961, 963, and 964 C.D. 2023).[3]

The trial court then held hearings on the Township's contempt motion. During the hearing, the DeNardos both testified that they voluntarily consented to the Consent Order on behalf of Majestic Hills and JND in exchange for their dismissal from the action. R.R. at 828a, 1124a-26a, 1128a, 1133a. The DeNardos further testified that they understood the terms of the Consent Order and the obligations imposed on Majestic Hills and JND to repair the Development's slopes and sanitary sewer system as approved by DEP. *Id.* at 831a-36a, 1126a-33a. Mr. DeNardo testified that they entered the Consent Order knowing that their companies did not have sufficient liquidity to cover the costs of the repair work, which was then estimated to cost in excess of $1 million.[4] *Id.* at 838a-39a, 840a, 843a, 845a-46a, 917a-20a; *see id.* at 791a-92a. At the time of signing, JND only had $13,080.97 in liquid assets available. R.R. at 791a. JND's highest end-of-month balance occurred in October 2021, with $32,404.70 in cash available. *Id.* at 789a. At no point in time after entering the Consent Order in October 2021 did JND have the liquidity to cover the costs of repairs. *Id.* at 792a. Although JND's financial records for 2021 revealed

---

[3] The notices of appeal were filed with the Superior Court, which transferred the appeals here. This Court has exclusive jurisdiction of "appeals from orders of the courts of common pleas" in "[a]ll actions or proceedings arising under any municipality, institution district, public school, planning or zoning code or under which a municipality or . . . where is drawn in question the application, interpretation or enforcement of any . . . statute regulating the affairs of . . . [a] municipality." Section 762(a)(4) of the Judicial Code, 42 Pa. C.S. §762(a)(4).

[4] In August 2021, JND received two proposals from Wagner Development totaling approximately $1,045,000 in estimated repairs to install post-construction stormwater management and repair the sanitary sewer line. R.R. at 1399a.

"work-in-progress inventory" of real property, valued at approximately $932,000, the DeNardos took no steps to determine fair market value of these assets or to liquidate them to fund JND's compliance. *Id.* at 792a, 846a. Mr. DeNardo also admitted that the named defendants never responded to DEP's requests for revised construction plans or commenced work on the slope. *Id.* at 908a-09a. On the eve of the trial court's contempt ruling, JND filed for Chapter 11 bankruptcy.[5] *Id.* at 1501a-02a, 1523a.

By Contempt Order, dated July 12, 2023, the trial court found JND, Majestic Hills, and the DeNardos in contempt. R.R. at 1505a-32a. Even though the DeNardos were not subject to the Consent Order, the trial court found the DeNardos accountable because they knowingly, willfully, and with wrongful intent violated the Consent Order. The trial court explained that the DeNardos acted deceptively in two ways: (1) by securing their dismissal from the action knowing that JND did not have the funds to comply with the obligations imposed under the Consent Order; and (2) by making no attempt to liquidate the assets in JND's possession to fund compliance with the Consent Order and seeking bankruptcy protection to unburden JND. *Id.* at 1523a-24a.

The trial court found:

> The DeNardos present as sophisticated and quite successful residential and commercial real estate developers. JND is part of a group of business entities that the DeNardos operate and control. They are the managing members of Lakemont Gardens, LLC, a mixed use development in South Fayette Township. The DeNardos also own a 95% stake in Ashwoood Land Partners, LP which has considerable land holdings in Washington

---

[5] Both Majestic Hills and JND have entered Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania (Bankr. W.D. Pa., Docket Nos. 20-21595-GLT and 23-21298-GLT, respectively).

County. The website for JND includes links to these and other business entities, that the DeNardos control.

R.R. at 1525a (footnotes omitted). "[T]he DeNardos made no pretense that they and JND are one in the same." *Id*. Despite agreeing to the terms of the Consent Order, the trial court found that the DeNardos' approach to the problems at the Development was to "figure it out." *Id*.; *see id*. at 921a-22a. "Though Mr. DeNardo stated he was willing to fund remediation to the point at which it was no longer economically feasible for him to do so, neither he nor Mrs. DeNardo demonstrated their present financial inability to pay for compliance." R.R. at 1526a.

The trial court ordered JND and the DeNardos to comply with the Consent Order and imposed compensatory and coercive sanctions upon them. As a compensatory sanction, the trial court awarded the Township $275,000 for onsite monitoring costs. As a coercive sanction, the trial court imposed a daily fine of $1,000, jointly and severally, from July 12, 2023, until such time as JND and the DeNardos satisfactorily complete a DEP-approved repair and remediation plan for all remaining environmental compliance matters at the development. R.R. at 1529a-30a.

The trial court provided two avenues for JND and the DeNardos to purge their contempt by either satisfactorily completing a DEP-approved repair and remediation plan or escrowing sufficient funds to offset the Township's cost to perform the work. The Contempt Order reincorporated the prohibition of the Preliminary Injunction Order with respect to the DeNardos' dissipation of assets and the placement of any net proceeds they receive from the sale of all real property holdings in which they possess, in whole or in part, an actual or equitable ownership interest, including property held by the Business Entities, into an escrow account. Finally, the trial court declared that "[i]n all other respects, the preliminary

12

injunction issued by this [c]ourt on May 25, 2023 [(Preliminary Injunction Order)] is DISSOLVED." R.R. at 1529a.

From the Contempt Order, Appellants filed a single notice of appeal (Docket No. 965 C.D. 2023).[6] Appellants also filed an emergency application for stay and supersedeas pending the appeal with the trial court and then with this Court.[7]

On July 27, 2023, the trial court denied application for stay and, *sua sponte*, corrected the Contempt Order as follows:

> 14. To effectuate the faithful performance of paragraph **13**, [the DeNardos] are ordered to place into a court supervised escrow account, the net proceeds ([*i.e.*,] Gross proceeds of any sales less all reasonable, necessary and customary costs associated therewith, and payment of any legal encumbrance, to include mortgage loans upon property subject to sale) derived from any sales, transfers, and/or assignments of any and all real property holdings in which they (the DeNardos) possess, in whole or in part, an actual or equitable ownership interest. This provision shall also apply to net proceeds of the sale of properties sold by certain entities in which [the DeNardos] hold a substantial majority ownership interest, to include [the Business Entities], with regard to [the Business Entities] the amount of the net proceeds deposited shall not exceed ninety-five percent (95%) of such net proceeds.
>
> 15. To effectuate the faithful performance of this Order, [the DeNardos], may from time to time, petition this Court to make withdraws from the Court supervised escrow

---

[6] This notice of appeal was also filed in the Superior Court, which transferred the appeal here.

[7] Appellants also filed an application for leave to file original process in the Supreme Court and an emergency writ of prohibition, which the Supreme Court "denied without prejudice to pursue in the regular course the issues sought to be addressed in the appropriate pending appeals before" this Court. *DeNardo v. Twenty-Seventh Judicial District* (Pa., No. 43 WM 2023, filed August 14, 2023).

account that holds proceeds of sales of real estate as described in paragraph **14** above[.]

R.R. at 1531a-32a (emphasis added to highlight the corrections).

Thereafter, the DeNardos petitioned to withdraw escrowed funds deposited under the Preliminary Injunction Order to pay the daily fines imposed under the Contempt Order. On August 14, 2023, the trial court denied the request and clarified its prior orders to rectify an omission -- the identification of a specific escrow agent for all funds paid into a court supervised escrow account. R.R. at 1543a-44a. Noting that the parties were not able to agree on the terms and conditions that would apply to a non-court related escrow agent, the trial court directed that "all funds deposited, in compliance with [the Preliminary Injunction] Order, and . . . held in an [Interest on Lawyer Trust Account (IOLTA)] at the law firm . . . be deposited into an escrow account maintained and supervised by the Prothonotary of Washinton County." *Id*. at 1543a. The trial court also ordered that "all future funds deposited, in order to comply with" the Contempt Order, as corrected, "be deposited into the same escrow account maintained and supervised by the Prothonotary of Washington County[.]" *Id*. at 1544a. "Upon request of any party to this case, the Prothonotary shall provide the requesting party a statement of the amounts paid into this single escrow account." *Id*.

By order of this Court dated October 4, 2023, we consolidated all appeals for review.[8] By order dated October 6, 2023, we denied Appellants' emergency application for stay. *See North Strabane Township*.

In addition to the consolidated appeals, we are also presented with the Township's Application seeking to dismiss the appeals from the trial court's

---

[8] Appellants, the Township, and DEP filed briefs. Majestic Hills, having failed to file a brief pursuant to this Court's order of March 8, 2024, was precluded from filing a brief and participating in oral argument.

Preliminary Injunction Order on the basis this order is moot as superseded by the trial court's Contempt Order (Docket Nos. 958, 959, 960, 961, 963, and 964 C.D. 2023). The Township alternatively seeks to quash the appeals filed by the Business Entities on the basis that they lack standing (Docket Nos. 958, 960, and 961 C.D. 2023). DEP joined the Application.

## II. Issues

On appeal,[9] Appellants raise several intertwined issues for our review, which we have reorganized for ease of discussion. First, Appellants contend that the trial court erred by holding the DeNardos in contempt and imposing sanctions against them personally because they were not parties to the action and were not bound by the Consent Order, having been dismissed from the action. Relying on *Belle v. Chieppa*, 659 A.2d 1035, 1037, 1039 (Pa. Super. 1995), Appellants add that the DeNardos cannot be held liable for JND's noncompliance with the Consent Order because JND filed for bankruptcy. Second, Appellants maintain that the trial court erred by holding Mrs. DeNardo in contempt and imposing sanctions against her because she is not, and never was, a controlling member, officer, or director of any party to the action. Third, they maintain that the trial court erred by entering contempt sanctions against the Business Entities, which have no direct connection to the parties involved in this action, were not subject to the Consent Order, and were

---

[9] Our review of a trial court's contempt findings is limited to determining whether the trial court committed an abuse of discretion or error of law. *Chester County Outdoor, LLC v. Westtown Township*, 162 A.3d 1180, 1184 n.8 (Pa. Cmwlth. 2017). "When considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge." *Mulligan v. Piczon*, 739 A.2d 605, 608 n.4 (Pa. Cmwlth. 1999), *aff'd*, 779 A.2d 1143 (Pa. 2001). As to grants of injunctive relief, our review is similarly limited to determining whether the trial court committed an abuse of discretion or error of law. *Hempfield Township v. Hapchuk*, 620 A.2d 668, 670 (Pa. Cmwlth. 1993).

15

not found in contempt. Fourth, the trial court erred by effectively imposing "single entity" or "enterprise" liability on the Business Entities without consideration of the factors set forth in *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021). Fifth, the trial court erred by instituting an effective receivership over Appellants' assets without making any findings that the elements of receivership were met. Finally, Appellants claim that the trial court erred by failing to provide an adequate or unambiguous purge condition that could be fulfilled by clear and certain actions.

In the Application, the Township and DEP raise two issues for our review. First, they assert that this Court should dismiss all appeals from the trial court's Preliminary Injunction Order as moot because the order was superseded by the trial court's Contempt Order. Alternatively, they contend that the appeals of the Business Entities should be quashed on the basis that they lack standing. Before addressing the issues presented by Appellants in their appeals, we first address the procedural issues raised in the Application.

### III. Discussion
### A. Application - Mootness

The Township and DEP contend that the trial court's Preliminary Injunction Order is moot because the order was fully superseded by the trial court's Contempt Order, as corrected and clarified by the orders of July 27, 2023, and August 14, 2023. They maintain that the Contempt Order incorporated some of the terms of the Preliminary Injunction Order and expressly dissolved the order in all other respects. *See* R.R. at 1529a. The trial court's August 14, 2023 clarification order made clear that all funds previously escrowed in compliance with the Preliminary Injunction Order were to be moved to a court-supervised escrow account, and that all future funds deposited therein would be in satisfaction of the

16

Contempt Order, not the Preliminary Injunction Order. As a result, the Township and DEP assert that Appellants' appeals from the Preliminary Injunction Order are moot and must be dismissed pursuant to Pennsylvania Rule of Appellate Procedure 1972(a)(4).

Pursuant to Rule 1972(a)(4), any party may file a motion to dismiss for mootness. Pa.R.A.P. 1972(a)(4). "An issue before a court is moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Shirley v. Pennsylvania Legislative Reference Bureau*, 318 A.3d 832, 850 (Pa. 2024). An example is an appeal taken from an order that is no longer binding. *See, e.g.*, *id.* (appeal of preliminary injunction was mooted by grant of permanent injunction); *Pennsylvania Coal Mining Association v. Department of Environmental Resources*, 444 A.2d 637, 638 (Pa. 1982) (dismissing as moot appeals where underlying preliminary injunctions had expired on their own terms).

The courts will not decide moot questions. *Chruby v. Department of Corrections*, 4 A.3d 764, 771 (Pa. Cmwlth. 2010). "Exceptions to this principle are made where (1) the conduct complained of is capable of repetition yet likely to evade review, (2) the case involves issues important to the public interest, or (3) a party will suffer some detriment without the court's decision." *Id*.

Here, the trial court's Contempt Order, as corrected and clarified, fully superseded the Preliminary Injunction Order. The Contempt Order outlines all binding obligations going forward. It incorporated key terms of the Preliminary Injunction Order, including prohibiting the DeNardos from dissolving their assets to avoid responsibilities and directing them to deposit any net proceeds received into

17

escrow. R.R. at 1527a-29a. "In all other respects, the [Preliminary Injunction Order] is DISSOLVED." *Id*. at 1529a.

When Appellants petitioned to use the funds deposited under the Preliminary Injunction Order to satisfy the Contempt Order's $1,000 daily fines, the trial court denied the request and clarified the Contempt Order. As clarified, the Contempt Order directs all funds deposited under the Preliminary Injunction Order and all future funds directed by the Contempt Order to be deposited into a single court-supervised escrow account. R.R. at 1543a-44a. Thus, the operative order going forward is the Contempt Order, not the Preliminary Injunction Order. Any aspects of the Preliminary Injunction Order not incorporated into the Contempt Order were dissolved. *Id*. at 1529a.

Although Appellants argue that the Preliminary Injunction Order remains viable because some funds were deposited pursuant thereto while other funds were deposited pursuant to the Contempt Order, it is a distinction without significance. All funds are now in a single escrow account and, combined, these funds are to be used "to offset costs incurred for projects in support of environmental compliance obligations in connection with the [] Development, as set forth in the October 15, 2021[] Consent Order." R.R. at 1528a. Appellants cannot point to any respect in which the Preliminary Injunction Order remains in effect. *See* Appellants' Brief at 15 n.1 (acknowledging it "remains unclear to what extent and in what respects the [Preliminary Injunction] Order is still in effect").

Upon review, we conclude that the Preliminary Injunction Order no longer has any legal force or effect and is moot as superseded by subsequent orders. Although there are various well recognized exceptions to the mootness doctrine that permit a court's review of moot issues, none of those exceptions apply here.

18

Appellants have appealed the Contempt Order, so the conduct complained of will not evade review. Therefore, we dismiss the appeals from the Preliminary Injunction Order (Docket Nos. 958, 959, 960, 961, 963, and 964 C.D. 2023) as moot.[10] We address Appellants' issues as pertaining to the Contempt Order (Docket No. 965 C.D. 2023).

## B. Appeal of the Contempt Order
### 1. Contempt and Sanctions against the DeNardos

Appellants contend that the trial court erred in finding the DeNardos in contempt of the Consent Order and imposing sanctions on them. Pursuant to the Consent Order, only Majestic Hills and JND were bound to perform the terms negotiated therein, and the DeNardos were dismissed from the action. The DeNardos are not bound by the Consent Order. Therefore, Appellants maintain that the DeNardos cannot be found in contempt or sanctioned for JND's noncompliance. The trial court based its contempt ruling upon finding that "the DeNardos secured their dismissal as defendants . . . through deceptive conduct." R.R. at 1524a. However, the DeNardos assert that they did not devise to remove themselves from the action. Rather, they simply accepted the Township's offer, which proposed their dismissal.

Appellants further assert that the trial court improperly pierced the corporate veil by sanctioning the DeNardos for JND's financial inability to comply with the Consent Order. The imposition of liability on the DeNardos is erroneous under *Belle*, 659 A.2d 1035, which directs that the proper relief for an entity that cannot comply with a court order due to insolvency is bankruptcy. At the time of

---

[10] In light of this disposition, we need not reach the Township's alternate issue of whether the Business Entities lack standing to challenge the Preliminary Injunction Order.

19

the contempt hearing, JND could no longer afford to comply and filed for bankruptcy. The DeNardos did not dissolve JND or take money out of JND for themselves as the corporate officers did in *Belle*. They did not direct JND to violate the Consent Order. Therefore, Appellants maintain that the DeNardos should not be sanctioned for JND's financial inability to comply with the Consent Order.

"The purpose of civil contempt is to compel performance of lawful orders." *State Ethics Commission v. Honore*, 150 A.3d 521, 526 (Pa. Cmwlth. 2016) (citation omitted). Additionally, "courts possess an inherent power to enforce their orders" and "have broad discretion in fashioning and administering a remedy for civil contempt." *Id.* (citations omitted).

It is well settled law that "a corporation acts only through its officers, agents, representatives and employe[e]s." *Americans be Independent v. Commonwealth by Creamer*, 321 A.2d 721, 727 (Pa. Cmwlth. 1974); *accord Weatherly Area School District v. Whitewater Challengers, Inc.*, 616 A.2d 620, 621 (Pa. 1992). Pennsylvania law establishes broad liability for those who knowingly violate court orders. *Brightbill v. Rigo, Inc.*, 418 A.2d 424, 430-31 (Pa. Super. 1980); *Americans be Independent*, 321 A.2d at 727.

> Generally, parties to an injunction action who have knowledge of the [o]rder or [d]ecree issued in the action and thereafter willfully participate in a violation of its provisions are subject to punishment for their contumacious acts. *Persons not parties to the action are also bound to observe the restrictions of an injunction*, when the same are known to such persons, to the extent that they must not aid or abet its violation by others, and if such persons are within the class whose conduct is intended to be restrained, they may not themselves violate the [o]rder or [d]ecree if its terms are known to them. . . . Thus[,] it has been held that although an injunction has issued only against a corporation or an unincorporated

association, *the injunction may be enforced by proceedings against officials of the corporation or association who know of the [o]rder and violate its provisions.*

*Brightbill*, 418 A.2d at 430-31 (citation omitted and emphasis added).

An officer of a corporation can be held in contempt of that corporation's noncompliance even when not named as a defendant in the action. *Brightbill*, 418 A.2d at 430-31; *see West Pittston Borough v. LIW Investments, Inc*., 119 A.3d 415, 421 (Pa. Cmwlth. 2015). Indeed,

[a] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they are guilty of disobedience, and *may be punished for contempt*.

*West Pittston*, 119 A.3d at 421 (quoting *Wilson v. United States*, 221 U.S. 361, 376-77 (1911)) (emphasis added).

In short, "corporate officers can be held in contempt of a corporation's noncompliance." *West Pittston*, 119 A.3d at 421; *see Wood v. Dunlop*, 334 A.2d 619, 622 (Pa. 1975); *City of Scranton v. Peoples Coal Co.*, 117 A. 673, 677 (Pa. 1922). The same holds true for members of a limited liability company (LLC). *B & R Resources, LLC v. Department of Environmental Protection*, 180 A.3d 812, 817 (Pa. Cmwlth. 2018); *see Department of Environmental Protection v. STK Investments* (Pa. Cmwlth., No. 778 M.D. 2018, filed June 13, 2022) (finding member of LLC could be punished for the LLC's contempt); *Department of Environmental Protection v. Stryker Energy, LLC* (Pa. Cmwlth., No. 415 M.D. 2018, filed June 5,

21

2019) (finding LLC in contempt and issuing a rule to show cause why LLC's members should not be held in contempt).[11]

Contrary to Appellants' assertions, such an enforcement action against a corporate officer to compel compliance and sanction wrongdoing does not require the piercing of the veil. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 89-90 (Pa. 1983). "[A] corporate officer can be liable in tort for his own wrongful conduct on behalf of the corporation, even though the corporation is not a sham and there is no basis for piercing the corporate veil." *B & R Resources*, 180 A.3d at 817; *accord Wicks*, 470 A.2d at 90. "This basis of individual liability, known as the participation theory, is predicated on the corporate officer's own actions and participation in the corporation's wrongful conduct, rather than the corporation's status and his relationship to the corporation." *B & R Resources*, 180 A.3d at 817. As our Supreme Court has explained:

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Wicks*, 470 A.2d at 89-90 (footnote omitted).

---

[11] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Notwithstanding, relying on *Belle*, Appellants contend that the DeNardos cannot be held in contempt for JND's noncompliance because JND filed for bankruptcy when it could not afford to comply with the Consent Order. In *Belle*, the trial court entered a mandatory injunction order against a corporate defendant directing it to repair a retaining wall, restore neighboring properties, and bear all associated costs. The corporation never complied with the injunction order. Believing the corporation did not have the manpower or financial resources to comply, the "directors, officers, and sole shareholders" (corporate officers) decided to dissolve the corporation rather than face the possibility of bankruptcy. *Belle*, 659 A.2d at 1037. Before dissolution, the corporate officers satisfied a line of credit with the bank, paid subcontractors and suppliers in full, and divided the remaining cash amongst themselves. After permitting the plaintiffs to amend their complaint to include the corporate officers as named defendants, the trial court held the corporate officers individually in contempt of the injunction order. The corporate officers appealed.

On appeal, the Superior Court found that the trial court did not abuse its discretion by finding the corporate officers in contempt of the injunction entered against the corporation. The corporate officers were sole shareholders of the corporation. They dissolved the corporation without attempting to comply with the injunction, and they continued business operations under a new corporation in which they served as shareholders. The Superior Court concluded that the voluntary dissolution of the corporation violated the law because the corporate officers made no provision for the mandatory injunction at the time of dissolution. The Court continued:

> [Corporate officers'] willful violation of the order in their
> capacity as directors, officers and shareholders of the

23

corporation was clearly contumacious and subject to a civil contempt citation, *regardless of whether* [corporate officers] *were joined as parties.* Where corporate officers knowingly disobey an injunction, the injunction can be enforced directly against those officers *even when they have not been joined as parties to the suit.* . . . [A] corporation acts only through its officers, agents, representatives and employees, and if such persons are permitted to knowingly violate the terms of an injunction, it would be impossible for a court to ever enforce an injunctive order against a corporation . . . . Here, [corporate officers] were the sole shareholders, directors and officers of [the corporation]. [Corporate officers] caused the corporation to be dissolved for the express purpose of avoiding its legal obligation to rebuild (or pay to rebuild) the retaining wall.

659 A.2d at 1039-40 (citations and quotations omitted; emphasis added). Thus, the Superior Court concluded that the trial court did not abuse its discretion in finding the corporate officers in contempt of the injunction order. *Id.* at 1040.

Appellants misinterpret and distort dicta from *Belle* to incorrectly suggest that the trial court's finding of contempt in this case was improper because JND filed for bankruptcy. However, *Belle* does not "direct" an entity that cannot comply with a court order to seek bankruptcy protection nor does it hold that the filing for bankruptcy insulates corporate officers from contempt. A contemnor's path to avoid contempt is to first exhaust all available means to comply with the court order and then, failing that, show that compliance was impossible, and that impossibility was not the fault of the contemnor. *Commonwealth v. U.S. Steel Corp.*, 325 A.2d 324, 329 (Pa. Cmwlth. 1974). "[I]n civil contempt proceedings[,] . . . [the] present inability to comply is an affirmative defense which must be proved by the alleged contemnor." *Barrett v. Barrett*, 368 A.2d 616, 621 (Pa. 1977); *see U.S. Steel*, 325 A.2d at 329. A mere allegation of impossibility is not enough. *U.S. Steel*, 325 A.2d at 329.

24

Here, the trial court found the DeNardos in contempt based on their participation in the wrongful conduct without needing to pierce the corporate veil. The underlying order at issue is the Consent Order. Although the DeNardos were dismissed per the terms of the Consent Order, Majestic Hills and JND were bound thereby. The DeNardos' dismissal from the action did not insulate them from contempt. JND is an LLC wholly owned by the DeNardos. As of 2017, JND is the sole member and 100% owner of Majestic Hills. As controlling members of JND, and in turn Majestic Hills, the DeNardos acted on behalf of their businesses and voluntarily consented to the obligations assumed by Majestic Hills and JND in the Consent Order in exchange for their personal dismissal from the action, regardless of which party proposed or drafted those terms.

In both *Belle* and this case, the courts found that the company officials acted with wrongful intent in directing noncompliance with a lawful court order. In *Belle*, the corporate officers' wrongful conduct that led to their contempt was their decision to dissolve the corporation and the willful disregard of the corporations' injunctive obligations. *Belle*, 659 A.2d at 1040. Here, the trial court found that the DeNardos acted with wrongful intent in two ways. First, the trial court found that the DeNardos agreed to their dismissal while obligating Majestic Hills and JND under the Consent Order knowing that these businesses did not have adequate funds to comply with the obligations imposed. R.R. at 1524a; *see id*. at 789a, 791a-92a, 838a-39a, 840a, 843a, 845a-46a, 917a-20a. Second, the DeNardos ignored their companies' legal obligations, made no attempt to liquidate the assets in JND's possession to fund compliance, and eventually sought bankruptcy protection in an effort to unburden JND. R.R. at 1519a; *see id*. at 792a, 846a. Mr. DeNardo admitted he could have, but did not, liquidate JND's real property assets, which were

25

identified as 10 real estate lots with a book value of approximately $1 million.  R.R. at 845a-46a, 933a; *see id*. at 781a.  The DeNardos did not obtain independent appraisals of the real estate lots to determine their fair market value.  *Id*. at 849a, 1158a.  Majestic Hills, JND, and the DeNardos never responded to DEP's requests for revised construction plans or commenced work on the slope.  *Id*. at 908a-09a.

In both *Belle* and this case, the individual decisionmakers who controlled the companies acted with wrongful intent to avoid the legal obligations of the companies.  Indeed, the DeNardos' actions in entering and then violating the Consent Order show greater wrongful intent than *Belle* in a key respect.  In *Belle*, the injunctive order was not by the consent of the corporation; it was a contested matter of liability that was affirmed on appeal.  By contrast, the DeNardos voluntarily consented to the obligations assumed by Majestic Hills and JND in the Consent Order in exchange for their dismissal from the action.  Upon review, the trial court did not err or abuse its discretion in finding the DeNardos, as the individual decisionmakers who controlled Majestic Hills and JND, in contempt based on their wrongful conduct and imposing sanctions against them.

**2. Contempt and Sanctions against Mrs. DeNardo**

Next, Appellants contend that the trial court erred or abused its discretion in finding Mrs. DeNardo in contempt and imposing sanctions upon her.  In addition to the reasons set forth above, Appellants maintain that the trial court should not have found Mrs. DeNardo in contempt on the basis that she was not a controlling member of JND.  Mr. DeNardo is the controlling member of JND.  Mrs. DeNardo testified that she is not, and never was, a controlling member, officer, or director of JND, and she did not act as one.  She was simply an owner.  Relying on

26

*City of Scranton*, 117 A. 673, Appellants posit that Mrs. DeNardo is akin to an "innocent stockholder." As such, she should not be held responsible for JND's failure to comply with the Consent Order.

In *City of Scranton*, the Supreme Court recognized the predicament of an "innocent stockholder" when a corporation is adjudicated in contempt and sanctioned. "Since a corporation can be punished by fine only, innocent stockholders would be compelled to pay the penalty and the off[i]cers, unless they were stockholders also, would escape altogether, although the actual contempt was theirs." 117 A. at 677. Therefore, the Supreme Court held that a stockholder cannot be cited or punished for corporate contempt unless he or she has "actual notice" of the order, which may occur without the person having been personally served with the order. *Id.* The Supreme Court explained that "the law does not permit one who knowingly acts in contempt of its decrees, to escape liability on a technicality." *Id.* Ultimately, the Supreme Court affirmed a finding of contempt against three corporate officers for knowing violations of an order to a corporation, including one officer who claimed "he was only [a] consulting engineer and assistant to the president." *Id.* at 679. Although this officer attempted to minimize his role in the violations at the trial, the Supreme Court found that there was sufficient evidence to establish that the individual "knew or should have known" that the violations were ongoing and that, "[w]hen he should have spoken, if innocent, he was silent . . . ." *Id.*

Here, JND is an LLC, which does not have officers or directors, but members. The DeNardos are the co-owners and equal members of JND; each own a 50% share. R.R. at 1106a. Although Mrs. DeNardo testified that she was not a controlling member of JND and did not get involved in the day-to-day operations,

27

*id*. at 1135a, 1163a-64a, she is also not an "innocent stockholder" as Appellants claim. As a 50% owner, Mrs. DeNardo's participation and agreement was necessary for JND to enter the Consent Order. *See Staiger v. Holohan*, 100 A.3d 622, 625 (Pa. Super. 2014) (explaining that when 50% owners of an LLC disagree, the result is a deadlock). She acknowledged she could have chosen not to agree to the Consent Order. R.R. at 1135a. She was a decisionmaker and played an active role in binding Majestic Hills and JND to the Consent Order and the obligations assigned thereunder in exchange for her dismissal from the action. *Id*. at 1106a, 1122a, 1125a-26a. Mrs. DeNardo voluntarily entered the Consent Order fully aware of the requirements. *Id*. at 1122a-24a. She understood that Majestic Hills and JND "accepted responsibility for [the] repair." *Id*. at 1124a. She also knew that the repair work was never done. *Id*. at 1136a. Although Mrs. DeNardo tried to downplay her role in the company, the trial court did not credit her efforts to minimize her involvement. *Id*. at 1524a-25a; *see City of Scranton*, 117 A. at 679; *see also In re Merlo*, 58 A.3d 1, 16 (Pa. 2012) (holding credibility determinations are for the trier of fact and will not be disturbed on appeal). Upon review, the trial court did not err or abuse its discretion in holding Mrs. DeNardo equally responsible for JND's failure to comply with the Consent Order.

### 3. Sanctions against the Business Entities

Next, Appellants argue that the trial court erred by entering contempt sanctions against the Business Entities. The Business Entities are not, and never were, parties to this action. They are not subject to the Consent Order. The Business Entities do not appear anywhere in the Consent Order, by name or even indirect reference. Absent specific and extraordinary circumstances, which have not been

28

identified here, Appellants argue that consent orders are not binding on nonparties. Furthermore, the trial court did not find the Business Entities in contempt. Yet, the trial court sanctioned the Business Entities. The Contempt Order requires that, if the Business Entities sell any property, they must make a forced distribution of the net proceeds (after paying encumbrances and costs) to the DeNardos, who must then place that amount into escrow. According to Appellants, the Business Entities cannot reinvest the proceeds of their business or use the proceeds to pay for operating expenses. They claim that the net effect is that the Business Entities' assets are seized and frozen.

The Contempt Order speaks for itself. The order does not compel the Business Entities to take any action or sanction them for Majestic Hills' and JND's noncompliance. The Contempt Order, as corrected, requires:

> 14. To effectuate the faithful performance of paragraph 13, [the DeNardos] are ordered to place into a court supervised escrow account, the net proceeds ([*i.e.*,] Gross proceeds of any sales less all reasonable, necessary and customary costs associated therewith, and payment of any legal encumbrance, to include mortgage loans upon property subject to sale) derived from any sales, transfers, and/or assignments of any and all real property holdings in which they (the DeNardos) possess, in whole or in part, an actual or equitable ownership interest. This provision shall also apply to net proceeds of the sale of properties sold by certain entities in which [the DeNardos] hold a substantial majority ownership interest, to include [the Business Entities], with regard to Ashwood Land Partners, [LP] and Ashwood Commons, LLC, the amount of the net proceeds deposited shall not exceed ninety-five percent (95%) of such net proceeds.

R.R. at 1531a. As this Court determined in the memorandum opinion denying Appellants' application for stay:

> [T]he trial court's [Contempt Order] neither binds the [Business Entities] nor imposes affirmative obligations upon these entities. Rather, the [C]ontempt [O]rder merely requires the DeNardos to place into an escrow account the net proceeds they themselves receive from any sales, transfers, and/or assignments from any real property holdings in which they possess, in whole or in part, an actual or equitable ownership interest, including the [Business Entities].

*North Strabane Township*, slip op. at 8.

By its plain terms, the Contempt Order imposes sanctions on the DeNardos, not the Business Entities. The Business Entities can continue ordinary business operations. There is no restriction on the Business Entities' ability to reinvest the proceeds from the sales into the businesses or to pay operating expenses. The Contempt Order does not force the DeNardos to take a distribution from transactions involving real estate owned through the Business Entities. The Contempt Order simply requires that *if* net proceeds are realized and distributed to the DeNardos by the Business Entities (which they control and which would only occur under their direction), *then* those net proceeds realized by the DeNardos must be escrowed to comply with the Contempt Order. Thus, we discern no error in this regard.

### 4. "Single Entity" or "Enterprise" Liability Theory

Next, Appellants contend that the trial court's Contempt Order imposes "single entity" or "enterprise" liability on the Business Entities. Such theories of liability have never been applied in Pennsylvania. Notwithstanding, application of these theories requires consideration of the requisite factors of *Mortimer* 255 A.3d 261. Appellants argue that the trial court erred by failing to consider any of the *Mortimer* factors or make any findings in this regard.

30

In *Mortimer*, our Supreme Court considered whether it "should adopt the 'enterprise theory' or 'single entity' theory of piercing the corporate veil to prevent injustice when two or more sister companies operate as a single corporate combine." 255 A.3d at 272. The Court concluded that "a narrow form of . . . 'enterprise liability' may be available under certain circumstances . . . ." *Id*. at 266. The Supreme Court set forth a two-part inquiry to determine when to pierce the veil:

> First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and second, adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice[.]

*Id*. at 286-87 (citation omitted). In describing corporate veil piercing, the Court observed that, "[l]ike lightning, it is rare, severe, and unprincipled." *Id*. at 269. Notwithstanding, "Pennsylvania courts will disregard the corporate form whenever it is necessary to avoid injustice, and so long as the rights of innocent parties are not prejudiced nor the theory of corporate entity rendered useless." *Id*. at 278 (internal citations and quotations omitted).

Although the Supreme Court distilled corporate veil piercing into a two-prong inquiry, the Court continued to recognize appropriate subfactors that may be considered including "'undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to perpetrate a fraud.'" *Mortimer*, 255 A.3d at 268 (quoting *Lumax Industries, Inc. v. Altman*, 669 A.2d 893, 895 (Pa. 1995)); *see In re Dravo LLC*, 307 A.3d 146, 156 (Pa. Super. 2023) (holding the *Lumax* factors remain good law and can be used to determine whether the veil should be pierced). While "all *Lumax* factors may not be needed or relevant in each piercing the veil case, courts

31

may still look to those factors, and the cases that applied them, for guidance when determining whether the *Mortimer* inquiry is met," provided that the courts recognize that "a plaintiff need not prove fraud to establish piercing is appropriate, even though fraud is listed as a *Lumax* factor." *Dravo*, 307 A.3d at 156; *accord Mortimer*, 255 A.3d at 278.

Appellants' reliance on *Mortimer* is misplaced. *Mortimer* did not involve an LLC member's violation of a court order and the court's attempt to enforce its order by way of contempt. Furthermore, the trial court here did not pierce the corporate veil and impose any liability on the Business Entities. Rather, the trial court imposed liability on the DeNardos for their contemptuous conduct by preventing them from dissipating their assets and requiring them to escrow any net proceeds they receive from the sale of any real property in which they have an interest, including property held by the Business Entities.

Courts in Pennsylvania regularly require the escrowing of assets to ensure that a judgment is satisfied. *See, e.g.*, *Ambrogi v. Reber*, 932 A.2d 969, 975 (Pa. Super. 2007) (enjoining the defendants in a wrongful death action from dissipating their assets by selling their real estate). An injunction to prevent dissipation of assets "is not a novel event" and "there is nothing unique" about requiring defendants to escrow net proceeds to ensure that a judgment is satisfied. *Id*.

Upon review, the trial court did not impose "single entity" or "enterprise" liability on the Business Entities. Rather, the trial court acted within its discretion by preventing the dissipation of the DeNardos' assets and directing them to place the net proceeds they received in a court-supervised escrow account to foster compliance with its orders.

## 5. Receivership

Appellants claim that the Contempt Order constitutes an effective receivership over Appellants' assets. According to Appellants, they cannot sell property without the trial court taking control of the proceeds. In order to make use of any of the money seized, JND and the DeNardos must apply to the trial court to make withdrawals from the escrow account, and no amounts may be used for any purpose, including compliance with the orders, without leave of the trial court. Appellants assert that the trial court did not make any findings that the elements of receivership were met. Instead, it simply imposed a *de facto* receivership.

The purpose of a receivership is "to assure that . . . assets will not be dissipated." *Hankin v. Hankin*, 493 A.2d 675, 677 (Pa. 1985). "[A] receivership of a solvent corporation is a drastic remedy" that should be granted only when the following elements are met:

> (1) the right to a receivership is free from doubt, and (2) a receivership is clearly required by the facts and circumstances and equities of the particular case. More particularly: a receiver should be appointed (a) only when the right to a receivership is clear, and (b) irreparable damage will in all probability result unless a receiver is appointed, and (c) a receivership will not substantially injure or interfere with the rights of creditors and stockholders, and (d) greater damage will result if a receiver is not appointed than if one is appointed.

*Tate v. Philadelphia Transportation Co.*, 190 A.2d 316, 321 (Pa. 1963) (footnote omitted). "[A] receiver may be appointed by the [c]ourt where there has been such gross mismanagement or fraud or similar circumstances that a receiver is clearly required." *Id*. However, "a receiver will not be appointed unless it appears that the appointment is necessary to save the property from injury or threatened loss or

33

dissipation." *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 301 A.2d 816, 818-19 (Pa. 1973).

Here, contrary to Appellants' assertions, the Contempt Order does not take possession of Appellants' assets, appoint a receiver, or otherwise impose a receivership over the assets. Rather, the order simply precludes the DeNardos from realizing net proceeds from the sale of any real property in which they have an interest, including property held by the Business Entities, until they have complied with the Contempt Order. The order's provisions requiring the escrowing of net proceeds are narrowly tailored. The order does not prevent Appellants from buying or selling real property or otherwise conducting business. The order does not force the sale of any real estate holdings or require the DeNardos to take a distribution from the sales. But if they do, any "net proceeds" must be escrowed to ensure compliance with the Contempt Order. R.R. at 1531a. Such does not constitute a *de facto* receivership.

### 6. Purge Conditions

Lastly, Appellants argue that the purge conditions do not clearly state what must be done. Pursuant to the Contempt Order, to purge contempt, the DeNardos must personally (there is no means for Majestic Hills or JND to purge contempt given their bankruptcy status) deposit money into the escrow account to cover the cost of repair and remediation. Appellants maintain that this purge condition is insufficient because no one knows what amount would be sufficient to cover those costs. They further claim that the trial court erred by not making an affirmative finding regarding the DeNardos' ability to pay.

As this Court has explained:

34

> The courts of this Commonwealth possess an inherent power to inflict summary punishment for contempt as a result of disobedience or neglect of the lawful orders or process of the court. *Commonwealth v. Garrison*, [] 386 A.2d 971 ([Pa.] 1978). "A consent decree, although negotiated by the parties, is a judicial act which is enforceable via the court's contempt power." *Jack Rees Nursing and Rehabilitation Services v. Hersperger*, [] 600 A.2d 207, 209 ([Pa. Super.] 1991). The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. *Bata v. Central-Penn National Bank of Philadelphia*, [] 249 A.2d 767 ([Pa.] 1969); *C.R. by Dunn v. The Travelers*, [] 626 A.2d 588 ([Pa. Super.] 1993). When contempt is civil in nature, as it is in this case, a court must impose conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket. *Kramer v. Kelly*, [] 401 A.2d 799, 802 ([Pa. Super. 1979).

*Cecil Township v. Klements*, 821 A.2d 670, 675 (Pa. Cmwlth. 2003).

"[I]n civil contempt proceedings[,] the burden is on the complaining party to prove noncompliance by a preponderance of the evidence . . . ." *Barret*, 368 A.2d at 621. The "present inability to comply is an affirmative defense which must be proved by the alleged contemnor." *Id*. "To impose civil contempt[,] the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the [o]rder." *In re Estate of DiSabato*, 165 A.3d 987, 992-93 (Pa. Super. 2017).

Here, the Contempt Order states:

> 5. As a coercive sanction, a fine of $1,000 per day is imposed upon [JND and the DeNardos], jointly and severally, from this day July 12, 2023, until such time as [JND and the DeNardos] satisfactorily complete a DEP approved repair and remediation plan for all remaining environmental compliance matters at the [] Development.

R.R. at 1527a. The Contempt Order also states:

35

8. As a purge condition, such coercive daily fine may be remitted should [the DeNardos] deposit into the court monitored escrow account an amount sufficient to offset [the] Township's costs in having work performed to fulfill the DEP's approved repair and remediation plan for all remaining environmental compliance matters at the [] Development.

*Id*. at 1528a. The Contempt Order offers two avenues by which JND and the DeNardos may avoid the coercive sanctions. They can either satisfactorily complete a DEP-approved repair and remediation plan or deposit sufficient funds to offset the Township's costs in having work performed. "[T]he continuation of the fine is within the DeNardos' control." *North Strabane Township*, slip op. at 9.

Insofar as Appellants argue that the Contempt Order does not include a fixed dollar amount to satisfy the condition, the reason for uncertainty in the cost of compliance is the DeNardos' own failure to submit an approved plan despite numerous requests and deficiency letters. The path to determine the necessary escrow funding is for the DeNardos to satisfactorily complete a DEP-approved repair and remediation plan, from which cost estimates could be readily ascertained. This too is within the DeNardos' control. Although Majestic Hills and JND have filed for bankruptcy, as the trial court found, the DeNardos have not demonstrated a present inability to pay. R.R. at 1529a.

## IV. Conclusion

Accordingly, we grant the Township's Application and dismiss the appeals from the Preliminary Injunction Order, dated May 25, 2023, as moot and superseded by the Contempt Order, dated July 12, 2023, and as corrected and clarified by orders dated July 27, 2023, and August 14, 2023 (Docket Nos. 958, 959,

960, 961, 963, and 964 C.D. 2023).  As to the remaining appeal from the Contempt Order (Docket No. 965 C.D. 2023), we affirm.

 

 

_____

MICHAEL H. WOJCIK, Judge

### IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| North Strabane Township | : **CASES CONSOLIDATED** |
| | : |
| v. | : No. 958 C.D. 2023 |
| | : |
| Majestic Hills LLC, and | : |
| JND Properties, LLC | : |
| | : |
| Appeal of: Lakemont Gardens, LLC | : |
| | |
| North Strabane Township | : |
| | : |
| v. | : No. 959 C.D. 2023 |
| | : |
| Majestic Hills, LLC, and | : |
| JND Properties, LLC | : |
| | : |
| Appeal of: Shari DeNardo | : |
| | |
| North Strabane Township | : |
| | : |
| v. | : No. 960 C.D. 2023 |
| | : |
| Majestic Hills LLC, and | : |
| JND Properties, LLC | : |
| | : |
| Appeal of: Ashwood Commons LLC | : |
| | |
| North Strabane Township | : |
| | : |
| v. | : No. 961 C.D. 2023 |
| | : |
| Majestic Hills, LLC, and | : |
| JND Properties, LLC | : |
| | : |
| | : |
| Appeal of: Ashwood Land | : |
| Partners, LP | : |

North Strabane Township       :
                                         :

            v.               : No. 963 C.D. 2023
                                           :

Majestic Hills LLC, and     :
JND Properties, LLC        :
                                         :

Appeal of: Joseph N. DeNardo   :

North Strabane Township       :
                                         :

            v.               : No. 964 C.D. 2023
                                         :

Majestic Hills, LLC, and    :
JND Properties, LLC        :
                                         :

Appeal of: JND Properties, LLC   :

North Strabane Township       :
                                         :

            v.               : No. 965 C.D. 2023
                                         :

Majestic Hills, LLC, and    :
JND Properties, LLC        :
                                         :

Appeal of: Joseph N. DeNardo, Shari :
DeNardo, Lakemont Gardens, LLC, :
Ashwood Land Partners, LP and   :
Ashwood Commons, LLC       :

# **O R D E R**

AND NOW, this <u>18th</u> day of <u>December</u>, 2024, the order of the Washington County Court of Common Pleas (trial court), dated July 12, 2023, as corrected and clarified by the orders dated July 27, 2023, and August 14, 2023, is AFFIRMED (Docket No. 965 C.D. 2023), and the appeals from the order of the trial

2

court, dated May 25, 2023, are DISMISSED as moot (Docket Nos. 958, 959, 960, 961, 963, and 964 C.D. 2023).

_____
MICHAEL H. WOJCIK, Judge